### ELLIS *v.* INSURANCE CO. OF NORTH AMERICA.

*(Circuit Court, S. D. Iowa, E. D.  1887.)*

1. INSURANCE—FORFEITURE—COVENANT OF POSSESSION OF ENTIRE INTEREST.
   A policy of insurance, under which plaintiff brought an action to recover for the loss by fire of property incumbered by mortgages, stipulated that if the interest of the assured in the property "does not amount to the entire, sole, and absolute ownership, it must in every such case be so represented to the company, and clearly expressed in the body of the policy, otherwise there will be no liability" thereunder, as to such property or limited interest. *Held,* that the stipulation does not refer to the matter of incumbrance, but to the character and quality of the time, whether that of a fee simple or leasehold or otherwise.

2. SAME—FORFEITURE—COVENANT—ASSIGNMENT.
   A policy of insurance covering property incumbered by mortgages executed subsequent to its issuance was assigned to the purchaser of the property with the consent of the company, "subject to all the terms and conditions of insurance mentioned and referred to" in the policy, which provided that the acquiring by a third party of all insurable interest in the property by virtue of a mortgage executed by the assured subsequent to the date thereof should cause the immediate termination of the policy, unless otherwise provided by special agreement expressed in the body of the policy. Neither the company nor the purchaser and assignee had any actual knowledge of the existence of the mortgages at the time the company gave its consent, or when the purchase and assignment were made. *Held,* that the consent of the company to the transfer of the policy was the creation of a new contract, and the assignee took it free of all vitiating circumstances, and upon the same terms as those upon which it was originally issued to the assignor, and that the company was estopped from denying its validity, either on the grounds of ignorance or for want of consideration.[1]

Motion for New Trial.

William L. Ellis, as assignee of certain policies of insurance, brought suit against the Insurance Company of North America to recover for the loss by fire of a stock of goods and building under four policies issued by the said company, to E. R. Ellis & Co., a firm composed of E. R. Ellis alone. The first policy was issued June 10, 1881, insuring a stock of merchandise for $500. The second policy on said stock was for $500, and dated October 10, 1881. The third policy, dated August 20, 1881,

---

[1] It has been held in *Iowa,* in an action brought by the assignee of an insurance policy, which had been transferred with the consent of the company, that the latter was not precluded from setting up the defense that the policy had become void in the hands of the assignor by reason of a violation of the condition against "incumbrances," the existence of the incumbrance not having come to the knowledge of the company at the time of the assignment. Ellis v. Insurance Co., 27 N. W. Rep. 762. But see dissenting opinion, Id. 765.

insured the building containing the stock. The fourth policy was one for $1,000 on the stock, and was dated December 8, 1881.

Each of the policies contained the following terms and conditions of the insurance therein.

"(*a*) If insurance is desired * * * on property * * * on leased ground, or on property of any kind in which the interest of the applicant for insurance does not amount to the entire, sole, and absolute ownership, it must in every such case be so represented to the company, and clearly expressed in the body of the policy, otherwise there will be no liability hereunder as to such property or limited interest.

"(*b*) The procuring of insurance on said property for more than its cash value, or the having of other insurance thereon, or any part thereof, valid or invalid, prior or subsequent, not made known to this company, and consented to hereon, * * * will render this policy null and void.

"(*c*) The acquiring by a third party of an insurable interest in the property, or any part thereof, by virtue of a mortgage or deed of trust executed by the assured subsequent to the date hereof, * * * or any change whatever in title or right of possession, not herein specified, succession by reason of the death of the assured excepted, shall each and all cause the immediate termination of this policy, unless otherwise provided by special agreement, clearly expressed in the body of the policy.

"(*d*) Agents of the company have no authority to bind the company in violation of any of the printed terms or conditions of insurance as herein expressed; and no printed or written condition or restriction hereof, which by its terms may be subject to waiver, shall be deemed to have been waived, except by a distinct specific agreement, clearly expressed in the body of the policy.

"(*e*) If the assured shall, by voluntary transfer or conveyance, dispose of the property covered by this policy, or of an undivided interest therein, or a change shall take place in the membership of the firm or copartnership for whose benefit the insurance hereunder was effected, this policy may be assigned to the party or parties succeeding to the ownership of the property, providing the company shall first consent thereto by indorsement thereon, otherwise this insurance shall cease from the date of such change in ownership. * * * This policy shall be subject to cancellation at any time, at the request of the assured, the company to retain earned premium, reckoned at the usual short rates for the time expired. The policy may also be at any time canceled by the company on refunding or tendering to the assured his, her, or their agent, a ratable portion of the premium for the time expired."

The first three policies were issued by the duly-authorized agent of the company, at Albia, Iowa; the last by its agent at Des Moines, who had no actual knowledge of the existence of the prior policies, though they had been reported to the company. December 6, 1881, E. R. Ellis executed and filed for record a chattel mortgage covering all the goods described in the policies. December 5, 1881, E. R. Ellis made a mortgage upon the lot and building covered by the policy, dated August 20th, which mortgage was recorded the same day. December 15, 1881, E. R. Ellis sold and conveyed to William M. Ellis, the plaintiff, the lot and building aforesaid, and December 20, 1881, the entire stock of goods therein contained was also transferred to him. An assignment of the policies was duly made December 23d, and the consent of the company thereto was indorsed upon each, as follows:

"The property hereby insured having been purchased by William M. Ellis, the Insurance Company of North America hereby consents that the within policy may be assigned to said purchaser, subject to all the terms and conditions of insurance herein mentioned and referred to. Dated Albia, Iowa, this twenty-third day of December, 1881.                    M. CARRIER, Agent."

December 21st, William M. Ellis and wife executed and delivered a mortgage upon the lot whereon the building and goods were situated, which mortgage was filed for record December 24th thereafter; at the time of the assignment of the policies, and the consent of the company given, neither the plaintiff nor the company had actual knowledge of the mortgages given by E. R. Ellis. The property was destroyed by fire, December 27, 1881; and, the defendant failing to comply with plaintiff's demands for adjustment, suit was commenced in the state court, but afterwards transferred to the United States circuit court, where the case was tried before Judge LOVE without a jury. The court found and entered judgment for plaintiff, whereupon a motion was made for a new trial; the defendant claiming that the first three policies were avoided by the mortgages of December 5th and 6th, and that the policy of December 8th was void because Ellis, being a mortgagor, was not the entire, sole, and absolute owner of the property.

BREWER, J. Two questions have been presented and argued; one of them of great difficulty as well as of some importance.

The first question arises upon these facts: One E. K. Ellis was the owner of property upon which he had taken out insurance policies, one of them that in suit. He sold that property to the plaintiff, William Ellis, and assigned the policy. The consent of the company was given to the assignment. At the time of the assignment there was an incumbrance upon the property in the shape of three or four mortgages. The policy provides that it shall be void if the insured is not the sole, absolute, and unconditional owner; and it is insisted that ownership is not equivalent to the mere matter of title, but goes to the interest held in the property, and that if that interest is subject to any condition the policy is vitiated. Plaintiff's ownership is held subject to this condition, that he pays the mortgage. Therefore it is not an unconditional ownership.

We are all familiar with the fact that applications for insurance policies usually contain two series of inquiries, independent in their nature, —one as to the matter of title, and the other as to that of incumbrance. Of course, different policies have different forms of stating these two lines of inquiry, but they are entirely independent. In one there is provision as to any incumbrance, its nature and extent; in the other there is inquiry and provision as to the character of the title, fee-simple or otherwise. It is further known that the policies and the blanks for application are prepared by the insurance companies, and it is familiar law that the stipulations and provisions therein are to be construed strictly against the insurer; that if there is any fact respecting which information is desired, or any provision which it is deemed necessary to insert, it is the duty, because it is the interest, of the insurer to see that there is

a clear and expressed question or stipulation covering the matter. With those two well-known facts before us, it seems to us that this stipulation must be held to refer, not to the matter of incumbrance at all, but to the character and quality of the title, whether that of a fee-simple or leasehold, or otherwise. And, as it appears unquestionably that the absolute title was in the party, we have with little hesitation come to the conclusion that the policy is not vitiated by these facts and that stipulation.

The other question is more serious and difficult. The policy contains a provision to this effect: that if the insured incumbers the property the policy shall be vitiated. The original party insured did place incumbrances upon the property. They were in existence at the time he sold the property to the plaintiff, at the time the assignment of the policy was made to the plaintiff, and at the time the company gave its consent. The company was ignorant of that fact, as was also the assignee and purchaser. Now, the assignment was assented to by the company subject to all the terms and conditions of the policy. And it is insisted, on the one hand, that the universal rule in respect to transfers of all choses in action or other contracts, with the single exception of negotiable paper transferred before maturity, is that the assignee simply steps into the shoes of the assignor; that he is subjected to all his burdens and liabilities, and has no other or higher rights than such assignor. Hence, as it is conceded, and there can be no doubt about it, that this policy while it remained with the assignor, his property, and before the sale and assignment, was vitiated by this incumbrance, was voidable at the instance of the insurer, the assignee has no higher right than the assignor had, and the policy is vitiated in his hands. On the other hand, it is insisted that this, which is called an assignment, has not the legal effect of a mere transfer of an existing right, but is equivalent to the creation of a new contract,—a contract springing into being at the moment the assignment is assented to between the assignee and insurer for the insurance of the property during the unexpired term. The authorities very generally say that where an assignment goes with an absolute sale of the property there is the creation of a new contract. If it is a new contract for one purpose, it is a new contract for all purposes.

The assignment is expressed to be subject to the terms and conditions of the policy. What does that mean? It is equivalent to saying that the assignee takes the contract as of present writing, containing the same terms and stipulations, binding him to the same duties, and subjecting him to the same liabilities, that were imposed by the contract in the first instance upon the assignor. In no other way can it fairly be said that a new contract was made; tested by that rule the assignee agreed, as the assignor had agreed in the first instance, that he would place no incumbrance upon the property, and that if he did the policy should fail. There is no pretense that he has violated that stipulation thus construed. It may well be doubted whether the use of the technical terms, "assignment," "assignor," and "assignee," are apt to describe the actual transaction. When the insured sells the property, that moment the policy

falls. He has no insurable interest. The policy ceases to have legal force as a policy. Can it be said he is assigning that which is nothing, and that the insurance company contemplates and assents to the transfer of that which has no legal existence? Take this case. Suppose a contract is made by which one binds himself to work for another for a period of one year at stipulated wages per month, with certain provisions regulating his conduct, and forfeiting his right to compensation in case of non-compliance therewith. Pending that contract he assigns it to another, which assignment is accepted by the other party, and this new party goes on and does the work in the same manner during the balance of the year as was done by the party from whom he received this contract. In one sense of the term you may say there is an assignment, but really there is substitution of a new party for the old, the creation of a new contract upon the same terms as the old, containing the same conditions, but operative only *in futuro*, and not subjecting the party doing the work to the burdens and penalties which had fallen on the assignor previous thereto under his contract for personal service. This is a practical question, and we must look at these matters in a practical light. When the purchaser buys the property, naturally the thought in his mind is insurance. It being his, and the old policy being dead, he looks for insurance. He finds a policy which had been in force, dead because of his purchase and cessation of the insurable interest in the assignor, yet which the insurance company is willing to have transferred to him. Would it not be an injustice to him if, after the insurance company has consented to that transfer, it could turn back to acts done by the person from whom he obtained the policy, and claim that those acts vitiated the whole thing, and rendered it not liable to the assignee? Many policies contain the stipulation that if the house be left vacant for three months the policy shall fall. Suppose a party buys a house ignorant of its history during the time the policy has been running, and the company assents to the policy; would it not be injustice for the insurance company to thereafter say that the policy was voidable on account of the vacation of the house for three months, and although he, the purchaser, has rested in the faith that his property was insured, it will pay him nothing on the loss? If such were the rule the assignment of policies would cease, and parties would take out in every instance new policies.

But it is said there is really no consideration for this contract on the part of the company; that the breach of the policy by the assignor forfeited all right to the unearned premium; and therefore the company received no consideration for any promise to insure for the unexpired term. The assignment of this policy is an assertion practically by the assignor of a right to an unearned premium, and the claim of such unearned premium, presented to the assignee, is assented to by the company when it consents to the assignment. It matters not that there may have been no actual right to such unearned premium, for the recognition and compromise of a claim is consideration. Further than that, there would be the injury to the assignee as well as the benefit to the insurer to be con-

sidered. Again, it is said that there can be no waiver without knowledge; that the insurance company was ignorant, (and that is admitted) of the fact of this incumbrance; and that it assented to the assignment and the transfer of the policy in ignorance of these facts; and therefore it should not be held to have waived its rights. There may be estoppel without knowledge. Suppose the insurance company had given a contract to pay a certain sum of money, a non-negotiable contract, and the party holding that contract had transferred it, assigned it to this plaintiff, and prior to such assignment the plaintiff had gone to the insurance company, and asked if that contract was in force, and the full amount due thereon, and he was told that it was; he could recover the full amount of that contract, although unknown to the insurance company, and before the transfer and assignment, the assignor, having collections, which he was authorized thus to use, collected money belonging to the insurance company, and applied it upon that debt. There would be an estoppel by reason of its statement that the full amount was due on that contract, which had misled the purchaser, and yet a statement made in ignorance of the real facts. This consent to the assignment, though not in terms a like statement, yet, dealing with things in a practical way, must be construed to have a similar effect, and as a statement by the insurance company that it recognized that policy as a valid instrument. Surely it would be unjust to think that the insurance company put itself into the position of assenting to the transfer of a policy which had no validity, going through the form of consenting to that which had no legal existence and was worthless. These considerations, although we concede that the question is one of not perfect transparency, lead us to the conclusion that this assignment must be taken, in the language of the text-books and the authorities, to create a new contract between the assignee and the insurance company,—a new contract embracing, as of present writing, the same terms and stipulations as were embraced in the contract originally written between the assignor and insured. This being the case, these prior incumbrances did not vitiate this policy, and the motion for a new trial must be overruled.

LOVE and SHIRAS, JJ., concur.