(115 So. 156)

**PENNSYLVANIA FIRE INS. CO. v. MALONE et al. (7 Div. 746.)**

Supreme Court of Alabama. Jan. 12, 1928.

1. Insurance ⊚⟾375(2)—Agent, issuing fire policy, had no authority to waive iron-safe or other material provisions after fire.

Agent, issuing fire insurance policy, was not authorized to waive requirements of policy for production of books, inventories, and papers, or other material provisions after the fire.

2. Insurance ⊚⟾388(1) — Insurer is not required to make useless demand for production and inspection of books and inventories, not taken, kept, or preserved as required by fire policy.

As respects waiver, the law will not require the doing of a useless thing, such as demand by insurer for the production and inspection of books and inventories that were not taken, kept, or preserved as required by fire insurance policy, and were destroyed by the fire.

3. Insurance ⊚⟾640(1)—Use of word "building" in plea for "premises" and "property" in fire policy sued on held not a variance.

In action on fire insurance policy, use of the word "building" in the plea for the word "premises" in the policy, and the words "destroy the aforesaid building" in the plea for the words "destroy the property hereby insured," contained in the policy, were averments of fact in the plea of the legal effect of the warranty in the policy, and did not constitute a variance.

4. Insurance ⊚⟾311(2)—Seller and buyer of insured merchandise stock held joint adventurers as respects assigned fire insurance on merchandise and consummation of sale contract.

As respects parties affected by policy forfeiture, where purchaser of insured stock of merchandise took possession and operated business as owner, subject to vendor's contract of sale and

right of intervention for cause, and renewal of assigned fire policy provided that loss should be payable to vendor to extent of his unpaid contract debt, and the balance to purchaser as owner, *held* that vendor and purchaser were in legal effect joint adventurers, as respects the insurance on the merchandise and in the consummation of the contract of sale and purchase.

**5. Insurance ⬤⇒311(2)—Fire policy, assigned to purchaser of merchandise stock, was not forfeitable for breach of inventory clause by assignor prior to assignment.**

Assignment of fire insurance on stock of merchandise sold by assignor, when approved by insurer, constituted a new and original contract between insurer and the assignor and assignee, and the policy was not subject to any forfeiture for a breach of the inventory clause by the assignor, prior to the assignment.

**6. Insurance ⬤⇒624(1)—Insurer held estopped to assert misjoinder of parties plaintiff in action by vendor and purchaser on fire policy assigned to purchaser with insurer's consent.**

Fire insurance policy on stock of merchandise providing that, if company's consent and interest thereunder exists in favor of a mortgagee or other person having interest in subject of insurance other than interest of insured described, conditions of policy shall apply to such interest, insurer was estopped to assert misjoinder of parties plaintiff in action brought by vendor of the merchandise and his purchaser on policy assigned to purchaser with consent of company.

**7. Insurance ⬤⇒335(1)—Books and inventories required by fire policy are such that ordinary person, familiar with method employed, can ascertain therefrom value of property insured.**

As respects books and inventories required to be made and kept under iron-safe and inventory clauses of fire insurance policy, they are required to be given a reasonable construction and application, and to be such that an ordinary person, familiar with the system employed, can ascertain therefrom, with reasonable certainty, the quantum and value of business and property insured during conduct of the business and at the time of the fire.

**8. Insurance ⬤⇒335(1)—Where fire policy requires both books and inventories to be kept, courts may not dispense with either.**

Where fire insurance policy requires both books and inventories to be kept, both together constituted important safeguards against fraud, and courts may not dispense with either.

**9. Insurance ⬤⇒335(2) — Purchaser's delay in making inventory until long after he was required to make it under fire policy caused it to lapse.**

Where fire insurance policy provided that insured shall take a complete itemized inventory at least once in each calendar year, and, unless such inventory has been taken within 12 calendar months prior to the date of the policy, one shall be taken within 30 days, delay of purchaser of insured stock of merchandise in making inventory until just before the fire, and long after he, as owner, was required to make the

inventory under the policy assigned to him, caused it to lapse.

**10. Insurance ⬤⇒335(2, 3)—Compliance with requirement of keeping books and inventories must be substantial, and parol evidence is admissible only to explain records.**

Attempted compliance with provisions of fire insurance policy on stock of merchandise, requiring the keeping of books and inventories, must be sufficient to reasonably show the quantum and value of the personal property on hand and destroyed, and parol evidence is admissible merely to illustrate and explain such records as assured's effort to substantially comply with the terms of the policy as distinguished from failure to take and keep such records.

**11. Insurance ⬤⇒335(1)—Fire policy, avoided by noncompliance with inventory and iron-safe clauses, cannot be revived by making belated inventory.**

Where fire insurance policy is avoided by noncompliance with requirements as to keeping records and inventories and preserving such records in iron safe, and the failure is not waived by insurer, policy cannot be revived merely by the act of insured making a subsequent or belated inventory.

**12. Insurance ⬤⇒335(1) — Mutual consent of contracting parties is only way in which fire policy can be revived after its lapse under iron-safe clause.**

Fire policy, avoided by failure to comply with requirements respecting keeping of proper records and making of inventory, can only be revived by mutual consent of the contracting parties to a reinstatement of the policy.

**13. Contracts ⬤⇒143—Courts will not remake contracts, but will only give effect to contracts according to obvious meaning expressed in unambiguous terms.**

Under the power of construction, courts will not make or remake contracts for the parties, but will only give force and effect to their contracts within the law according to the obvious meaning of the parties, if expressed in clear and unambiguous terms, and in absence of questions of public policy or ultra vires.

**14. Insurance ⬤⇒146(1)—Plain and unambiguous terms of fire policy, entered into by parties without disability, constitute "law of case."**

If the terms of a fire insurance policy, entered into by parties without disability, are plain and unambiguous, their being no questions of public policy or ultra vires involved, the rule of the contract is the "law of the case" in action on policy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Law of the Case.]

**15. Insurance ⬤⇒335(2, 4)—Where purchaser failed to take inventory within 30 days, or preserve in iron safe inventory made by vendor, no recovery could be had on fire policy.**

Under fire policy requiring insured to take a complete inventory once each calendar year, and, unless such inventory has been taken within 12 months before date of policy, one shall be

taken within 30 days, where owner sold insured stock of merchandise in December, 1924, as of January 1, 1925, and policy was assigned with insurer's consent, so as to protect respective rights of original owner and purchaser, *held*, that purchaser was required to take inventory within 30 days, and, where purchaser failed to make inventory for 9 months after purchasing, and did not preserve inventory made by original owner in February, 1924, in iron safe, as required by policy, no recovery on policy could be had by either.

**16. Insurance ☜335 (2, 3)—Entry of lump sum paid for merchandise stock on purchaser's books held insufficient as inventory or bookkeeping record.**

Where purchaser of insured stock of merchandise opened his books with a merchandise account at an arbitrary purchase price, not supported by the inventories required by the fire insurance policy, such lump sum was insufficient as an inventory or as detailed account of business by books required to bè kept.

Appeal from Circuit Court, De Kalb County; W. W. Haralson, Judge.

Action on a policy of fire insurance by G. L. Malone and L. P. Lewis against the Pennsylvania Fire Insurance Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

Coleman, Coleman, Spain & Stewart, of Birmingham, and Baker & Baker, of Ft. Payne, for appellant.

Where an assignment of a policy to a purchaser or other owner has been duly assented to by an insurer, a new and independent contract arises between the insurer and the assignee. 26 C. J. 134; Bayless v. Merchants' Town Mut. Ins. Co., 106 Mo. App. 684, 80 S. W. 289. The iron safe clause is reasonable and valid and effective according to its terms. Day v. Home Ins. Co., 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652; Home Ins. Co. v. Williams (C. C. A.) 237 F. 171; Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 225, 39 A. L. R. 1436; Ins. Co. v. Williams, 200 Ala. 681, 77 So. 159; Georgia Home v. Allen, 128 Ala. 451, 30 So. 537. A set of books and invoices cannot dispense with the necessity for an inventory as required by the policy. Day v. Home Ins. Co., supra; Royal Ins. Co. v. Kline (C. C. A.) 198 F. 468; Ætna Ins. Co. v. Mount, 90 Miss. 642, 44 So. 162, 45 So. 835, 15 L. R. A. (N. S.) 471; Cooley's Briefs, 1819–1820. A policy of insurance, avoided for noncompliance with the inventory provisions of the iron-safe clause, cannot be revived by making an inventory subsequently and before a loss. 26 C. J. 251; Reynolds v. German American Ins. Co., 107 Md. 110, 68 A. 262, 15 L. R. A. (N. S.) 345; Hartford F. I. Co. v. Adams (Tex. Civ. App.) 158 S. W. 231; North River Ins. Co. v. Waddell, 216 Ala. 55, 112 So. 336. The set of books must be sufficient in themselves to show the quantum and value of the goods de-

stroyed; parol evidence can only be resorted to, to explain the system of bookkeeping. Hanover F. I. Co. v. Wood, supra; Ins. Co. v. Williams, supra; Home Ins. Co. v. Williams, supra. A set of books which shows all cash receipts as cash sales when in fact part of cash coming in is from credit sales previously made, is not a compliance with the bookkeeping clause. Cooley's Briefs, 1824; Joyce on Ins. 2063; Ridley v. Ridley, 25 Ga. App. 154, 102 S. E. 918. Failure to keep and produce last preceding inventory is a breach and defeats recovery. Cooley's Briefs, 1820; Shawnee F. I. Co. v. Thompson, 30 Okl. 466, 119 P. 990; Continental Ins. Co. v. Cummings, 98 Tex. 115, 81 S. W. 706. Books are useless to avoid fraud till the inventory is taken. Cooley's Briefs, 1821. Insurance contracts are construed according to their obvious meaning. Day v. Home Ins. Co., supra; McConnell v. Fid.-Dep. Co., 212 Ala. 340, 102 So. 617; Mutual L. I. Co. v. Barrett, 215 Ala. 142, 110 So. 277; Empire L. I. Co. v. Gee, 178 Ala. 492, 60 So. 90. An agent must be duly authorized to act in regard to the matter in hand and must be in and about the company's business, before he can effect a waiver. Hanover F. I. Co. v. Wood, 209 Ala. 380, 96 So. 253; Prine v. Amer. Cent., 171 Ala. 343, 54 So. 547; State Mutual v. Long Clothing & Shoe Co., 123 Ala. 667, 26 So. 655; Ins. Co. v. Letcher, 143 Ala. 400, 39 So. 271.

Chas. J. Scott, John B. Isbell, and C. A. Wolfes, all of Ft. Payne, for appellees.

There is such a variance between the allegations of plea 3 and the proof as would authorize the court to refuse the affirmative charge based on said plea. The policy does not require that the inventory taken twelve months before the issuance of the policy must have been made by Lewis. It is only required that inventories taken after the issuance of the policy be kept in the safe. Where insurance policies are susceptible of two constructions, the one most favorable to the assured will be adopted. Travelers' Ins. Co. v. Plaster, 210 Ala. 607, 98 So. 909; McConnell v. Fidelity-Dep. Co., 212 Ala. 339, 102 So. 617; 26 C. J. 256. If books kept are such that an ordinary person familiar with the system can ascertain the quantity and value of the goods destroyed, they are sufficient. London Assur. Corp. v. Poole, 212 Ala. 109, 101 So. 831; Hanover F. I. Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436.

THOMAS, J. Plaintiffs' action was for the value of a stock of goods destroyed by fire.

Defendant's pleas were the general issue and that setting up the violations of specific clauses of the policy. These special pleas invoke provisions of the contract, to the effect, that "assured will (1) take a complete itemized inventory of stock on hand at least

once in each calendar year, and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of said policy," and, failing in this, the "policy shall be null and void from such date" of failure; (2) will keep a set of books presenting "a complete record of business transacted," of "all purchases, sales and shipments, both for cash and credit, *from date of inventory*"; (3) that "such *books and inventory, and also the last preceding inventory*, if such has been taken (will be) securely locked in a fire-proof safe at night," and when the building is not open for business, or "will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building"; and (4) concluded with the averment that the policy stipulated that, in the event of failure to produce "such set of books and inventories," said policy "shall be null and void, and such failure shall constitute a perpetual bar to any recovery thereon." And respective counsel concede that plea 2 concluded with the averment of assured's failure to take complete inventory of stock of goods on hand within 30 days of the issuance of the policy, "nor within one year previous" thereto. And the ruling as to this plea and the issues of fact raised by the evidence will be rested upon the concession of counsel that plea 2 in both cases before us are alike.

Pleas 3, 4, 5, and 6 contained matter indicated in plea 2, with the respective additional averments as follows:

"* * * Assured did not, within 12 calendar months prior to the issuance of the policy sued on, take a complete itemized inventory of stock on hand, and did not, within 30 days after the issuance of said policy, take such inventory.

"* * * The assured did not keep a set of books which clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments, both for cash and credit from the date of the last inventory and to the date of the fire.

"* * * Assured did not produce his set of books which clearly and plainly present a complete record of the business transacted, including all purchases, sales, and shipments both for cash and credit from the date of the last inventory to the date of the fire.

"* * * Assured did not produce the inventories required to be kept and produced by assured, by the provision hereinabove quoted."

[1, 2] Replications to pleas 5 and 6 are to the effect that, after the fire, all books, inventories, and papers set out in said pleas were produced or tendered to the local agent, "who wrote the policy"; that there was no demand by defendant for such production. Demurrers directed thereto should have been sustained. The authority of the agent issuing the policy, without more, was not that to waive production or other material provisions after the fire, and is not shown by the facts set out in the replications, nor by the express averment of the pleader. The third replication does not aver that defendant was required by the terms of the contract to make demand, nor is it averred that the books and inventories required to be taken and kept were preserved, or were forthcoming after the fire. The law would not require the doing of a useless thing as a demand for the production and inspection of books and inventories that were not taken or kept or preserved as per contract terms, and that were destroyed by fire. The insurer had the right to rely upon the warranties and covenants, in said respects, contained in the policy. Robinson v. Ætna Ins. Co., 135 Ala. 650, 659, 34 So. 18.

[3] The use of the word "building" for "premises" in the plea (premises in the policy), and the use of the words "destroy the aforesaid building" in the plea for "destroy the property hereby insured," as contained in the policy, were averments of fact in the plea of the legal effect of the third covenant or warranty contained in the policy. And no variance was presented, nor would be declared, if the same had been duly invoked during the trial and according to the rule. It is sufficient to say that such variance was not insisted upon as the basis of affirmative instruction requested by plaintiffs as to said pleas.

[4, 5] Judge Malone owned and sold the property to Lewis on December 29 or 30, 1924, and the latter assumed possession of the business as owner on January 1, 1925, and operated it subject to Malone's contract of sale and right of intervention for cause. The intention manifested by the parties as to the renewal of the insurance expiring January 21, 1925, was to constitute a new contract with loss payable to Malone to the extent of his unpaid contract debt and the balance to Lewis as owner. This made them in legal effect joint adventurers in the consummation of the contract of sale and purchase, and as affecting the insurance on that stock of goods and the policies evidencing same held by Malone. Such is the effect of the evidence of Malone and Sawyer, the terms of the contract of sale in evidence, and arguments of counsel. Such was the effect of an assigned policy by the owner to the purchaser of a stock of goods in Bayless v. Mercantile, etc., Co., 106 Mo. App. 684, 80 S. W. 289. The assignment, when approved by the insurer, constituted a new and original contract between the insurer, by his assent, and the vendor and assignee by their contract and agreement, and such policy was not subject to any forfeiture for a previous breach of an inventory clause by the seller and assignor, prior to the assignment. Continental Ins. Co. v. Munns, 120 Ind. 30, 22 N. E. 78, 5 L. R. A. 430; Shearman v. Insurance Co., 46 N. Y. 526, 7 Am. Rep. 380; Steen v. Insurance Co., 89 N. Y. 315, 42 Am. Rep. 297; Ellis v. Insurance Co. (C. C.) 32 F. 646.

[6] What was the contract? It is provided by the terms of the policy as follows:

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

Such was the express agreement of the joint adventurers and insurer. There was no misjoinder of parties plaintiffs available to defendant. The joint adventurers may maintain the suit as plaintiffs, and each acts for the interest of the other. Christie v. Durden, 205 Ala. 571, 88 So. 667; Saunders v. McDonough, 191 Ala. 119, 67 So. 591; Id., 201 Ala. 328, 78 So. 160. As between Malone and Lewis, one sues for the benefit of the other within the terms of their enterprise; the insurer had agreed to pay such insurance, if liable therefor; and it is estopped to question their right of suit by said joint plaintiffs. The undisputed facts are that the insurance issued on the stock, fixtures, etc., theretofore carried by G. L. Malone & Co., was to expire on January 21 or 22, 1925. The renewal thereof had been prepared by the local agent, or written up by him (not delivered), a short while before the date of expiration and that of the sale of the stock by Malone to Lewis; the policy being countersigned December 26, 1924. The period for which the policy was to embrace was one year from January 22, 1925. And before delivery of the policy that agent was informed of the sale, and requested that it be rewritten according to the interests represented by the sale. To accomplish this, the agent affixed to said policies a rider agreement of date of January 1, 1925, that "recognizes George L. Malone and L. P. Lewis, owners, as the assured by this policy," subject "to all conditions of the policy."

The relations of the plaintiffs to each other and to the insurer as to the insurance effective from January 22, 1925, entering therein as a part of the security to Malone for the purchase price of the goods, were that Lewis, the owner, was in possession from January 1, 1925, with the power of disposition in due course, and Malone was the loss payee, protected in his sale by the insurance, the installment payments of one-half the monthly gross sales, and the right of intervention for cause. After the change of possession was effective, Lewis had the ownership of the stock of goods, furniture, and fixtures, in the primary sense, and was not only placed in possession of the subject-matter, but of the inventory made by Malone in 1924—it was left in his possession, and he kept the books. Malone took no further or active part in the conduct of the business from

January 1, 1925, to the date of the fire in November, except only to make his collections of monthly installments and maintain a representative in and about the store to report to him of Lewis' operations.

Judge Malone is frank and specific as to his relations to the business and the inventory made by him between the 1st and middle of February, 1924; that he left it (inventory) in the store when he sold and delivered the possession to Lewis. He said: "I just left it under the safe * * * or put it on the safe"; supposed "that witness had no further use for it"; that it could not be found "after the fire"; did not again see that inventory after he "cleaned out the safe and turned it over to Mr. Lewis"; and wisely observed that, if he had not "sold out," he "was going to make another (inventory) in January," meaning for 1925.

[7, 8] We may say generally of the provisions of the policy for making and keeping inventories and books, what is known and provided as the iron-safe clauses have been considered by the courts and declared to be reasonable and effective for the prevention of fraud. Southern States, etc., Co. v. Kronenberg, 199 Ala. 164, 74 So. 63; Insurance Co. v. Williams, 200 Ala. 681, 77 So. 159; Day v. Home Ins. Co., 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652; Georgia Home v. Allen, 128 Ala. 451, 30 So. 537; Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436. In a consideration of the books and inventories to be made and kept as compliance with the terms of the policy, the same are required to be given a reasonable construction and application, and they are required to be such as that an ordinary person, familiar with the system or method employed, can ascertain, from such records of the business, with reasonable certainty, the quantum and value of the business and property insured during the conduct of that business and at the time of the fire. This is stipulated by the parties as a necessary protection against fraud. Insurance Co. v. Williams, 200 Ala. 681, 686, 77 So. 159; Hanover Fire, etc., Co. v. Wood, supra; London, etc., Co. v. Poole, 212 Ala. 109, 101 So. 831; Georgia Home v. Allen, 119 Ala. 436, 24 So. 399; Hanover Ins. Co. v. Crawford, 121 Ala. 258, 25 So. 912, 77 Am. St. Rep. 55; Chamberlain, Trustee, v. Shawnee Co., 177 Ala. 516, 58 So. 267. And, where the parties had contracted for both books and inventories, it is held by this court that "both together" constituted "important safeguards," and the courts may not "dispense with either." Day v. Home Ins. Co., 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652.

[9] Lewis' delay in making inventory until just before the fire, and long after he, as owner, was required to make the inventory, caused the policy to lapse, and his belated act could not revive the policy. North River

Co. v. Waddell, 216 Ala. 55, 112 So. 336; Reynolds v. German American Ins. Co., 107 Md. 110, 68 A. 262, 15 L. R. A. (N. S.) 345.

[10] The distinction between clauses in insurance policies for the keeping of books and the taking and keeping of the required inventories, and to exhibit the same as required by the contract, are independent safeguards against fraud; and that there is a difference between the *failure* to take and keep such memorials of the business and the effort to *substantially* comply with the provisions of the policy as to the same.

The case of Hanover Fire Insurance Co. v. Wood, 213 Ala. 134, 136, 104 So. 224, 39 A. L. R. 1436, contains declarations to the effect that such conditions subsequent, or warranties, under the iron-safe clause—as that to keep books and take the required inventories—are reasonable, and neither may be dispensed with by the assured. The text of 26 C. J. 250, note 57, and Cooley's Insurance Briefs, 1814, are cited with approval, and it is said:

" 'There is no authority in the courts, on the supposition that the purposes which the parties intended to secure may have been unnecessary or as well secured by other means to disregard the valid requirements and conditions of such contracts, or to construct by implication or otherwise, a new agreement in place of that deliberately made by the parties.' Dwight v. Insurance Co., 103 N. Y. 346, 8 N. E. 654, 57 Am. Rep. 729; Day v. Home Ins. Co., supra,"

—and that the bookkeeping must be such that it "perpetuates in intelligible and reasonably accessible form the memory of things as they were *understood at their date.*" The general authorities and our decisions are agreed that such required compliance with contract provisions must be sufficient in themselves to reasonably show the quantum and value of the personal property on hand and destroyed; and the purpose and effect of parol evidence as to this cannot be made to do the office of such a memorial, or to supplement required books and inventories; that is, that such evidence may merely illustrate and explain the same as assured's effort to substantially comply with the terms of the policy. Hanover Fire Insurance Co. v. Wood, supra; Insurance Co. v. Williams, 200 Ala. 681, 683, 77 So. 159; Chamberlain, Trustee, v. Shawnee Fire Ins. Co., 177 Ala. 516, 519, 58 So. 267; Fidelity-Phœnix Ins. Co. v. Williams, 200 Ala. 678, 77 So. 156; Home Ins. Co. v. Williams, 237 F. 171, 150 C. C. A. 317.

And it is further asserted, on well-reasoned authorities, that the necessity for inventories as provided for by the policy, requiring a substantial record of the value and extent of assured's business during its conduct and to the time of its destruction by fire, cannot be dispensed with, nor is there a substantial compliance by a belated and incompleted compliance for books and inventories. Ætna Ins. Co. v. Mount, 15 L. R. A.

(N. S.) 471, note. We will again advert to this part of the subject.

In this jurisdiction, speaking of a substantial compliance of the iron-safe clause as to keeping books, it was held a violation where the assured made the entries of sale upon a pocket memorandum book, and subsequently were transferred to the blotter, and from that blotter to the ledger; that he made these transfers "once a week, probably, and sometimes oftener"; that at the time of the fire the sales for the last four days had never been transferred from the blotter to the ledger; that he had lost his pocket memorandum, and the blotter had been left out of the safe, and was destroyed by the fire. This holding of noncompliance of policy requirements to make and keep books is rested upon the reason that the blotter was the only book in which he made entries of goods bought and sold on credit, and that it also showed the amount of goods used out of the store by the family of assured; and that these material facts were necessary for an authentic history of the business—of its quantum and value to and at the time of the fire. Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399; Id., 128 Ala. 451, 30 So. 537. This ruling has not been departed from in a case where there was no waiver of the condition. Hanover Fire Ins. Co. v. Wood, 213 Ala. 132, 104 So. 224, 39 A. L. R. 1436; Fidelity-Phœnix Ins. Co. v. Williams, 200 Ala. 681, 77 So. 156; London, etc., Co. v. Poole, 212 Ala. 109, 101 So. 831; Tedder v. Home Ins. Co., 212 Ala. 624, 103 So. 674.

[11,12] That is, where the policy of insurance is avoided by *noncompliance* (and the failure is not waived), the policy cannot be revived merely by the act of the insured making a subsequent or belated inventory. This is the result of the analogy to be found in the decision in the recent case of North River Ins. Co. v. Waddell, 216 Ala. 55, 112 So. 336; The holding being that the provision of the policy rendering (and forfeiting) it void by the change of interest or title, without consent, cannot be rendered ineffectual by the subsequent reacquisition of the title by the assured before the fire. Such action by the assured was not sufficient under the law of that contract for a revival of the policy and to reinstate it after the violation of its positive and material terms, and without the consent of the insurer. 26 C. J. § 240, p. 197; section 318, p. 251; 19 Cyc. 709. The mutual consent of the contracting parties to a reinstatement is the only way in which the policy can be revived. Home, etc., Co. v. Kuhlman, 58 Neb. 488, 78 N. W. 936, 76 Am. St. Rep. 111, 116, notes.

We again advert to the general authorities as to the effect of a belated compliance with provisions of policies, as the taking of inventory. In Reynolds v. German Amer. Ins. Co., 107 Md. 110, 68 A. 262, 15 L. R. A. (N.

S.) 345, the court said of violations of a provision requiring an inventory to be taken within a given time and of the failure thereof that it may seem to be a hard rule to declare a policy forfeited for some act of omission or commission which, in point of fact, was not the cause of the fire, and actually did no injury to the insurer; but, when parties enter into contracts which are not prohibited by law, and are declared by the court to be reasonable, upon what principle can a court revive a policy which by its terms, had become null and void, simply because the insurer sustained no injury by reason of the insured's failure to do what is required of him? "After this policy became null and. void the insured could not by his act alone revive it so as to bind the insurer." Hartford Fire Ins. Co. v. Adams (Tex. Civ. App.) 158 S. W. 231; Dolliver v. Granite State F. Ins. Co., 111 Me. 275, 89 A. 8, 50 L. R. A. (N. S.) 1106, and notes, Ann. Cas. 1916C, 765; Joffe v. Niagara F. Ins. Co., 51 L. R. A. (N. S.) 1047, notes; Cohen v. Home Ins. Co., 6 Boyce (Del.) 212, 214, 97 A. 1014; Rhode Island Ins. Co. v. Phelps, 141 Md. 363, 118 A. 749; First Nat. Bank v. Maryland Casualty Co., 142 Md. 454, 121 A. 379, 30 A. L. R. 618; Miller v. Home Ins. Co., 127 Md. 145, 96 A. 267, Ann. Cas. 1918E, 384; Bemis v. Ins. Co., 200 Pa. 340, 49 A. 769; Wainer v. Ins. Co., 153 Mass. 335, 26 N. E. 877, 11 L. R. A. 598; Dolliver v. Granite Co., 111 Me. 275, 89 A. 8, 50 L. R. A. (N. S.) 1106, Ann. Cas. 1916C, 765; East Tex. Ins. Co. v. Kempner, 87 Tex. 229, 27 S. W. 122, 47 Am. St. Rep. 99; Hardiman v. Fire Association, 212 Pa. 383, 61 A. 990; Hoover v. Insurance Co., 93 Mo. App. 111, 69 S. W. 42; German Ins. Co. v. Russell, 65 Kan. 373, 69 P. 345, 58 L. R. A. 234; 26 C. J. 255, 256; 3 Am. & Eng. Enc. of Law, 355. We have adverted to the case of Reynolds v. German Amer. Ins. Co., 107 Md. 110, 68 A. 262, 15 L. R. A. (N. S.) 345, the authority for the text of 19-Cyc. p. 709.

In Cooley's Insurance Briefs it is declared:

"A clause providing that the insured shall take an inventory at least once in each calendar year, that, unless one had been taken within 12 months prior to the date of the policy, one should be taken within 30 days thereafter, and that assured should keep such inventory, 'and also the last preceding inventory,' if such has been taken, requires that the inventory taken preceding the date of the policy should be kept. Continental Ins. Co. v. Cummings [98 Tex. 115] 81 S. W. 705. But the words 'last preceding inventory' do not refer to an inventory taken more than 12 months prior to the issuance of the policy. Continental Ins. Co. of New York v. Waugh, 60 Neb. 348, 83 N. W. 81. If the last inventory has been kept, and exhibited after the fire, its subsequent loss is not ground for forfeiture. Pelican Ins. Co. v. Wilkerson, 53 Ark. 353, 13 S. W. 1103."

In Joffe v. Niagara F. Ins. Co., 116 Md. 155, 81 A. 281, 51 L. R. A. (N. S.) 1059, 1060, Ann. Cas. 1913C, 1217, it is said of like provisions of a policy of fire insurance:

"The insured is required to keep the books and inventories as herein provided, and, 'in the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon.' The latter does not make a policy null and void merely because the assured does not keep his books in a safe, or as provided in the alternative, but the failure to produce the books and inventories has that effect, and constitutes a bar to recovery for a loss sustained. In other words, 'if there had been no fire, the closing of the store on this occasion would not have invalidated the policy, but as the fire did occur, and did confessedly prevent the books and inventories from being produced, then there can be no recovery in the absence of such books and inventories, unless the assured did what they agreed to do for the safekeeping of the books and inventories, or can be excused from not doing so.

"In that connection, we would add that we would have no hesitation in holding that if an assured, acting in good faith, placed the books in a safe which he believed to be fireproof, or in some place which he had the right to believe was not exposed to a fire which would destroy the building, the mere failure to produce the books would not necessarily be a bar to his recovery. On the contrary, we could readily concur in the view taken by the Supreme Court in Liverpool & L. & G. Ins. Co. v. Kearney, 180 U. S. 132, 21 S. Ct. 326, 45 L. Ed. 460, and other cases on such a question. Mr. Justice Harlan said: 'We are of opinion that the failure to produce the books and inventory referred to in the policy means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence, or design on the insured,' and, as the failure to produce them in this case was by reason . of the fault and negligence of the plaintiffs in leaving them in the store when it was not actually open for business, they cannot be excused."

And the subject is thus dealt with by the Texas Court in Continental Ins. Co. v. Cummings, 98 Tex. 115, 121, 81 S. W. 705, 707, as follows:

"The remaining question is, Did the warranty in the iron-safe clause of the policies require the producing of the inventory taken in January, 1901? * * *

"The inventory taken in January, 1902, was produced as required by the terms of the policies, and, if the policies required the production of but one inventory, then their requirements are satisfied. The inventories which are required to be preserved and produced are described as 'such books and inventory,' and 'the last preceding inventory,' etc., which refers to those mentioned in the second section of this clause, which, in turn, describes them as 'the inventory provided for in the first section of this clause' and 'the last preceding inventory.' The first section of the iron-safe clause provides for an inventory to be taken after the issuance of the policies, which was done in January, 1902. The inventory of 1902 was called for in section 1 of the iron-safe clause, and that of 1901 was the last preceding inventory. Therefore the assured was required by the third section to preserve and produce to the insurer both of those inventories, and, unless the testimony shall show

that the agent of the insurance company, knowing of the loss of the inventory of 1901, waived its production, the two policies issued in December must be held void as to the stock of goods."

The same rule was applied in Shawnee Fire Ins. Co. v. Thompson & Rowell, 30 Okl. 466, 119 P. 985, where the holding was:

"The provision of a fire insurance contract which requires that the insured will keep such books and inventory securely locked in a fireproof safe at night, etc., is a promissory warranty, and is not substantially complied with by producing an inventory made one month prior to the fire, where it is shown that the inventory made within 12 calendar months prior to the issuance of the policy had been negligently allowed to remain out of the fireproof safe, and, together with the books, be destroyed, especially when the last inventory was not made in compliance with the terms of the policy, the goods not being itemized, but mere summaries of the amounts and values being given."

See, also, Dolliver v. Granite, etc., Co., 111 Me. 275, 89 A. 8, 50 L. R. A. (N. S.) 1106, Ann. Cas. 1916C, 765.

It is noted that in Hanover Fire Ins. Co. v. Crawford, 121 Ala. 258, 261, 262, 25 So. 912, 913 (77 Am. St. Rep. 55) the announcements are:

"The law will be guided by a respect to general convenience and equity and by the good sense and reasonableness of the particular case, for it must be supposed that it was the intention of the parties that such construction should take place. In the case of Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399, this court held the iron-safe clause to be a condition subsequent. This covenant and promissory warranty imposed upon the insured the duty to take a complete itemized inventory of his stock of goods within thirty days of the issuance of the policy, unless such inventory had been taken within twelve months prior to the date of its issuance and, at all events, to take this inventory at least every twelve months from the time of the taking of the last one. It also exacted of him that he keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory and during the continuance of the policy. He was required to keep these books and inventory and also the last preceding inventory if such has been taken, securely locked in a fireproof safe at night and at all times when the building mentioned in the policy is not actually open for business, or failing in this, the assured will keep his books and inventories in some place not exposed to a fire which will destroy the storehouse. It is further provided that in the event of his failure to produce his books and inventories for the inspection of the defendant company that the policy shall become null and void, etc. The purpose of incorporating this condition in the policy is patent from its language."

We have heretofore presented the holding in Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399. And the rule there announced has the adherence of this court in

the recent case of North River Ins. Co. v. Waddell, 216 Ala. 55, 112 So. 336, 338.

[13] Under the power of construction, courts will not make or remake contracts for the parties. It will only give force and effect to their contracts within the law—there being no questions of public policy or ultra vires presented—according to the obvious meaning of the parties, if expressed in clear and unambiguous terms. Kilby, etc., Co. v. Georgia Cas. Co., 209 Ala. 356, 96 So. 319; Union Cent. v. Johnson, 198 Ala. 488, 73 So. 816; Cherokee Co. v. Brannum, 203 Ala. 148, 82 So. 175; Empire Life Ins. Co. v. Gee, 178 Ala. 492, 60 So. 90; Day v. Home Ins. Co., 177 Ala. 600, 58 So. 549, 40 L. R. A. (N. S.) 652; McConnell-White-Terry R. & I. Co. v. Fidelity, etc., Co., 212 Ala. 340, 102 So. 617; Mutual Life Ins. Co. v. Barrett, 215 Ala. 142, 110 So. 275; North River Ins. Co. v. Waddell, 216 Ala. 55, 112 So. 336.

[14-16] If the terms of the policy, by parties without disability, are plain and unambiguous, there being no questions of public policy or ultra vires presented, the rule of the contract is the law of the case. And here the contract clause of the policy was that the "assured will take a complete itemized inventory * * * at least once in each calendar year, unless *such inventory has been taken within twelve calendar months* prior to the date of the policy, one shall be taken * * * within thirty days." The words of the policy *"such inventory has been taken,"* were employed with the obvious meaning of taken by *the assured,* and do not refer to an inventory that had been taken by some other person. That is to say, the words *such inventory* must be referred to that inventory previously required of the *assured,* and the contract further required that the assured will keep *"such books* and *inventory* and also the last preceding inventory."* The last preceding inventory made by Malone was left by him with Lewis, and not preserved in the iron safe with the books; and the inventory by Lewis was not taken within 30 days of his purchase. The latter was supported by the entry on his books and the assumption of a $15,000 valuation of the stock purchased from Malone. Lewis was depleting the stock by daily sales and the monthly payments to Malone of the agreed amount—"50% of the gross sales of said stock of goods." Thus is illustrated the necessity of making and keeping the required books and inventories as a true memorial of the quantum and value of the business during its conduct and at the time of its destruction by fire.

If the plaintiffs had produced the inventory taken by Lewis, it was not made within the time required by the contract by him as the owner. Not having taken an inventory in the calendar year, or within 12 calendar months prior to the date of the policy, he

should have taken one in detail within 30 days of the issuance of said policy declared upon, as required of him as owner. He did not make such inventory, but opened his books with a merchandise account in a gross or lump sum of the purchase price. And the books he kept began with an arbitrary sales price of $15,000, and were not supported by the required inventories. Such lump sums are insufficient in inventories, or as the detailed accounts of the business by the books required to be kept. Shawnee v. Thompson & Rowell, 30 Okl. 466, 119 P. 985.

Malone's inventory was taken in February, 1924, and that by Lewis 9 months after his purchase and the assumption of possession of the property insured. Of this Lewis testified:

"I took an inventory of the Malone stock. This was taken between September 1st and September 7th, before the fire occurred in November, and that is the only inventory I took. I kept the books—besides the ledger a cash book, a day book and different books. (Here witness identified the books, the cash book as follows: 'A black book marked ledger consisting of 472 pages.' The ledger was identified as follows: 'A book marked S E Ledger consisting of 186 pages.' The inventory was identified as follows: 'Inventory Ft. Payne Sept. 1, 1925.' The Daily Sales Book was identified as follows: 'Daily Sales Book.')"

Witness further testified:

"I made up the daily sales book along; some time I would enter—that there Monday sales February 9th, possibly entered that on that day, and, if I was awfully busy, sometimes I would make a ticket $575, and file it, and then at the end of the week put them down on this, when I entered them I burned the ticket up. I made all the entries on the books and the inventory."

Malone said:

"The last inventory I made of the stock of goods was about the 1st of February, 1924, before I sold to Mr. Lewis in December, 1924; somewhere between the first and middle of February before I sold in December. That inventory was down there when I sold out. When I sold out to Lewis I just left it under the safe, my recollection is I took it out of the safe and put it under the safe. At the time I sold out I had an inventory in the safe made in February, 1924. If I hadn't sold out, I was going to make another in January."

On cross-examination:

"That inventory got burned, I suppose, Mr. Stewart. I throwed it on top of the safe or laid it down under the safe when I sold out to Lewis."

Hence the testimony is without conflict as to the inventories taken and preserved to and after the fire. And this evidence shows, without conflict, the Malone inventory was not preserved; that Lewis failed to make a timely inventory within 30 days from date of policy; that the books kept proceeded on the basis of the agreed purchase price, rather than an inventoried price of the volume and reasonable market value; and the books kept confused the cash sales with the amounts of cash collected on credit sales theretofore carried into the volume of the business.

The evidence as to keeping books and inventories is without dispute, and within the pleadings presents a question of law, and authorized the giving of affirmative instruction requested for defendant.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.