(119 So. 834)
**HARTFORD FIRE INS. CO. v. ISBELL.**
**(7 Div. 734.)**

Supreme Court of Alabama. Nov. 1, 1928.

Rehearing Denied Jan. 24, 1929.

Coleman, Coleman, Spain & Stewart, of Birmingham, and John J. Haynes, of Columbiana, for appellant.

Leeper, Wallace & Saxon and L. H. Ellis, all of Columbiana, for appellee.

SAYRE, J. Appellee brought his action on a policy of fire insurance. Appellee was a merchant, and the policy covered his stock of goods which was destroyed by fire in July, 1925. The policy contained the following covenants:

"Warranty to keep books and inventories and to produce them in case of loss.—The following covenant and warranty is hereby made a part of this policy:

"1. The assured will make a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"2. The assured will keep a set of books which shall clearly and plainly present a complete record of business transactions, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"3. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire proof safe at night, and at all times when the premises mentioned in this policy are not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to fire, which would destroy the property hereby insured.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall be null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

One ruling only on the numerous exceptions reserved as to questions of evidence is noted in the assignments of error. Appellant's brief fails to refer to that page of the transcript which shows the exception in question, as Supreme Court Rule 10 requires. Nor does the index or the assignment of errors help to cure the omission, which might well cause some inconvenience in the consideration of a record of several hundred pages. Nevertheless, we have examined the exception and find that the ruling complained of can hardly suffice for the reversal of the judgment under review. It is this: Plaintiff was allowed, over defendant's objection, to ask Mrs. Isbell, plaintiff's wife, whether, a few days after the fire, the state fire marshal came to her house —this, evidently, as introductory of the further statement by the witness that "they" searched her home without finding any goods stored there. In view of the fact that defendant appellant had introduced testimony tending to show that shortly before the fire goods had been removed from the storehouse in which plaintiff did business to the dwelling where plaintiff and his wife lived, this evidence, because of the time elapsed, was weak and inconclusive, but competent and relevant in the way of rebuttal.

The cause was tried on two well-defined issues: (1) Whether plaintiff's stock of goods had been willfully burned by the assured; (2) whether plaintiff had complied with so much of what is commonly referred to as the "Iron-Safe Clause;" quoted above, as required the assured to take an inventory and keep "a set of books which shall clearly and plainly present a complete record of business transacted, including," etc., and to produce the same for inspection in the event of a fire.

There is no need to discuss the first named of these issues, for it presented a question of fact as to which different inferences might have been drawn, it may, for the argument, be conceded. But it is altogether impossible to affirm that the weight of the evidence was on the side of defendant, or that the court should have set aside the verdict on this ground.

In the brief stress is laid upon the proposition that the inventory produced by plaintiff along with his proof of loss was not the inventory required by the warranty of the policy, but had been conceived and prepared after the fire in order to make good plaintiff's claim. This contention involved also a question of fact which was properly left by the trial court to remain as the jury found it in their verdict.

The vital question presented by the record is whether plaintiff kept books of account as the policy of insurance prescribed that he should. Defendant insists that as matter of law plaintiff failed in this respect to make out his case. As to the charge that plaintiff manufactured his books in large part after the fire, we need only say that, at best for appellant, that matter was in dispute and was properly submitted to the jury. On this question of fact, as in the matter of the inventory. we do not feel authorized to reverse the finding of the triers of fact.

As for the proposition that plaintiff's books in large part were destroyed or reduced

to an unintelligible mass by the fire which destroyed his stock of goods, and so that plaintiff was unable to produce his books, thereby failing in his promissory warranty concerning them, we observe that some of plaintiff's books and business records had been placed in an iron safe of a sort commonly used by prudent men in connection with business establishments of the sort conducted by plaintiff; but, according to the testimony of plaintiff and some of his witnesses, on the night of the fire, a hole had been drilled into the safe by persons unknown and without plaintiff's knowledge or connivance, so that the value of such books and records as evidence was in large part destroyed. It appears to be the law, that if plaintiff in good faith provided an iron safe for the keeping of his books, as' the contract of insurance required when interpreted as we have indicated (3 Cooley's Briefs [2d Ed.] pp. 2802, 2832), the happening of an event beyond the contract of the insured, as, for example, burglars, in the effort to loot the safe, destroy its integrity to the extent that it is no longer fireproof, and the goods insured and the books of the business are destroyed, such a happening will not deprive the insured of the protection of his policy. Penn. Fire Ins. Co. v. Malone, 217 Ala. 168, 115 So. 156. ■■■ Appellant's insistence that the books of account produced by appellee cannot be taken as a compliance with the warranty of the policy presents a question of some difficulty. More than 300 pages of the transcript are taken up by a copy of appellee's books, that is, of one book, and maybe parts of other books. Some of the books on the night of the fire were in the keeping of the bookkeeper, who was also bookkeeper for the bank and worked on appellee's books after his hours at the bank and after night. The fact that the books, or some of them, were thus saved from the burning, along with other circumstances, is commented upon as going to show that appellee planned the fire. But that was clearly a question for jury decision, and we by no means feel that its finding should be overturned. But the main question is presented by appellant's contention that as matter of law the books should be declared an inefficient and ineffectual compliance with the requirement of the policy. For one thing, attention is called to the fact, or alleged fact, that the items of entry are so lacking in dates as that from them the jury could not have found the quantity of goods in the storehouse at the time of the fire. Every item is dated with reference to month and day of the month. The objection is that items are not dated as of the year of the transactions they represent. We have examined the accounts as copied in the transcript, and, for ourselves, we may as well confess that from the copy we could not estimate the stock of goods at the time of the fire. This may be due to lack of bookkeeping skill, or because the accounts as copied into the transcript present a difference in appearance from the same accounts in the original

books of entry. While the vast majority of entries are dated as we have stated, we find at frequent intervals throughout the accounts year dates covering the three or four years in which appellee was engaged in the mercantile business. What these dates, as they appear in the originals, may mean to an expert bookkeeper, we are unable to say. But appellee's bookkeeper, who testified for him, deposed that he was or would be able from the data furnished by the books to estimate the value of the stock on hand at the time of the fire. "It was sufficient if the books were kept in such manner that, with the assistance of those who kept them or understood the system on which they were kept, the amount of purchases and sales could be ascertained, and cash transactions distinguished from those on credit." Western Assurance Co. v. McGlathery, 115 Ala. 224, 22 So. 108, 67 Am. St. Rep. 26. We are unable therefore to say that on the ground here under consideration appellant was entitled to the general charge.

■ One other fault found with appellee's books is that they failed to show the items of the goods sold for cash. They showed the items of credit sales and the amounts collected from cash sales, but not the specific goods sold for cash. This, it seems, when considered in connection with the principle stated last above, was a sufficient compliance with the terms of the policy. 3 Cooley's Briefs (2d Ed.) 2823; London Assurance v. Poole, 212 Ala. 109, 101 So. 831.

The judgment is due to be affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

## On Rehearing.

SAYRE, J. ■ For one thing, appellant complains that no record was kept of the sawmill checks issued by appellee to his sawmill hands and redeemed at the store by the delivery of goods. Appellee's contention is that these checks figured on the books as cash. The parties were far from making this matter clear at the trial, and we confess to some doubt about it now. But this may be said in justification of the trial court's refusal of the general charge (in several different forms, though in effect the general charge) which is made the basis of the first five assignments of error: The burden of proof in general rested upon appellant to show a breach of the promissory warranty in question. Morris v. Imperial Ins. Co., 106 Ga. 461,[1] and the cases cited to Ætna Ins. Co. v. Johnson (Ga.) 9 L. R. A. (N. S.) 669.[2] We would not be understood as holding that the insured can be relieved—except in some such contingency as we have named—of the duty of producing his books. And in the ordinary case the books will speak for themselves, showing compliance or noncompliance with

[1] 32 S. E. 595.
[2] 127 Ga. 491, 56 S. E. 643, 9 Ann. Cas. 461.

the policy agreement. However, in the present case we are unable to say from an inspection of the record that the insured failed to keep books according to his agreement.

The other point stressed in the brief on this application has had consideration heretofore, and we are of opinion that the conclusion then stated should not be disturbed.

Application overruled.

