**Norma D. THATCHER, Plaintiff,**

v.

**RELIANCE INSURANCE COMPANY, a corporation of the Commonwealth of Pennsylvania, Defendant.**

Superior Court of Delaware.

New Castle.

Feb. 17, 1967.

James L. Latchum, Berl, Potter & Anderson, Wilmington, for plaintiff.

Roger P. Sanders, Richard W. Pell, Prickett, Ward, Burt & Sanders, Wilmington, for defendant.

QUILLEN, Judge:

One Jesse Loven and the plaintiff purchased a dwelling house on April 6, 1962.

On May 24, 1962, the defendant issued a fire insurance policy covering the property in the amount of $9,000.00; Loven and the plaintiff were the named insureds. The defendant, under the policy and up to its face amount, insured "the insured named" to the extent of actual cash value, not exceeding repair or replacement cost, "nor in any event for more than the interest of the insured" against direct loss by fire. The policy could not be assigned, "except with the written consent of [the defendant]". The policy provided that the defendant would not be liable for loss occurring while the building had been unoccupied beyond a period of ninety days.

In late April, 1966, Loven delivered the insurance policy to the plaintiff and notified the defendant that the plaintiff was to buy his interest in the property.

On May 2, 1966, Loven deeded his interest in the property to the plaintiff. Effective the same date, the defendant by a "General Endorsement" to the policy included as part of the policy the following:

"The name of assured is amended to read

NORMA D. THATCHER

All other conditions remain the same".

On June 4, 1966, the property then owned by the plaintiff exclusively was destroyed by fire. It had been unoccupied since the fall of 1964.

The plaintiff sued the defendant on the policy. The defendant denied liability on the basis of the 90 day non-occupancy clause. The plaintiff has moved for summary judgment. The defendant, at the time of filing its opposing brief on the plaintiff's motion, also moved for summary judgment. But it was agreed by both counsel at oral argument that factual issues such as waiver and estoppel would prevent summary judgment in the defendant's favor, even if the Court accepted the defendant's position on the 90 day non-occupancy clause. I therefore consider the defendant's motion as withdrawn. Although both sides have suggested it, I decline at this time to consider the defendant's motion as a motion for partial summary judgment because I do not understand exactly what order is being requested.

Simply put, it is the position of the plaintiff that a new contract of insurance was formed as a result of the "General Endorsement" on May 2, 1966, and that such new contract commenced a new 90 day non-occupancy period. Consequently, for purposes of the insurance contract, the plaintiff argues that the house had not been unoccupied 90 days at the time of the fire.

The proposition upon which the plaintiff relies is deeply rooted as a rule of common law. Chief Justice Shaw of Massachusetts spelled out the "new contract" concept in Wilson v. Hill, 44 Mass. 66, 68–69 (1841) when he said:

"An insurance of buildings against loss by fire, although in popular language it may be called an insurance of the estate, is in effect a contract of indemnity, with an owner, or other person having an interest in the preservation of the buildings, as mortgagee, tenant, or otherwise, to indemnify him, against any loss, which he may sustain, in case they are destroyed or damaged by fire. If, therefore, the assured has wholly parted with his interest, before they are burnt, and they are afterwards burnt, the underwriter incurs no obligation to pay any body. The contract was to indemnify the assured; if he has sustained no damage, the contract is not broken. If, indeed, on a transfer of the estate the vendor assigns his policy to the purchaser, and this is made known to the insurer, and is assented to by him, it constitutes a new and original promise to the assignee, to indemnify him in like manner, whilst he retains an interest in the estate; and the exemption of the insurer from further liability to the vendor, and the premium already paid for insurance for a term not yet expired, are a good consideration for such promise, and constitute a new and valid contract between the insurer and the assignee. But such undertaking will be binding, not because the policy is in any way incident to the estate, or runs with the land, but in consequence of the new contract. Even the assignment of a chose in action, with the consent of the debtor, and a promise on his part to pay the assignee, constitute a new contract, on which the assignee may sue in his own name."

See also Fogg v. Middlesex Mutual Fire Insurance Company, 64 Mass. 337 (1852).

Building on the concept of the "new contract," the plaintiff argues that the non-occupancy period must be computed from the time of the issuance of the "new" policy and not from the time when the house became vacant. Old Colony Insurance Company v. Garvey, 253 F.2d 299 (4th Cir. 1958).

The plaintiff cites numerous cases to support the proposition that, where property and insurance contract convering it are transferred to an assigned with the assent of the insured, a new · contract is formed and the assignee is relieved of any part forfeitures incurred by the assignor. See citations collected at 5 Appleman, Insurance Law & Practice § 3456; 3 Richards on Insurance (5th ed.) § 507, p. 1634; 16 Couch on Insurance (2d ed.) § 63.202.

But no case has been brought to my attention by either party which is directly on point with the case at Bar. The unique feature here is that no new party has been added as an insured under the policy. Rather, the only change in the policy is that one of the two original insureds has been eliminated. The question arises as to whether or not the apparently unique facts of this case call for a different rule of law then applied in those cases which have been cited by the plaintiff.

The legal relationships of the basic factual situation present here were discussed in another context in the case of Virginia-Carolina Chemical Company v. Sundry Insurance Cos., 108 F. 451 (C.C. S.C.1901). In that case, for jurisdictional purposes, it was important to determine whether the plaintiff sued as an assignee. The Court reviewed the "new contract" theory and determined that under such theory the plaintiff was not an assignee. But then the Court took "another point of view" which becomes pertinent in analyzing the case at Bar.

The policy had insured one Crenshaw against direct fire loss, but it also included the following:

"Loss, if any, payable to W. G. Crenshaw, Jr., or the Virginia-Carolina Chemical Company, as their interest may appear."

After the issuance of the policy, the following endorsement quoted at 108 F. 457 was put upon the policy:

" 'The interest of W. G. Crenshaw, Jr., as owner of the property covered by this policy, is hereby assigned to the Virginia-Carolina Chemical Company, subject to the consent of [the insurer],' —followed by this: 'The [insurer] hereby consents that the interest of W. G. Crenshaw, Jr., as owner of the property covered by this policy, be assigned to the Virginia-Carolina Chemical Company.' "

The Court said of the endorsement the following, also at 108 F. 457:

"This is not, nor does it profess to be, an assignment of the policy. It fixes and establishes the interest of the plaintiff, and sustains the allegation that the defendants thereby promised to pay the plaintiff the whole loss. These indorsements evidently have reference to that part of the policy which states who are to be indemnified under it, and fix the fact that the Virginia-Carolina Chemical Company alone is insured thereunder, Crenshaw having no interest therein. So we have the promise in the original contract to pay the chemical company to the extent of its interest, and the official statement that this interest is exclusive in the whole loss which might, and which in fact did occur."

The Court continues on pages 458–459 with the following commentary:

"Does plaintiff sue as assignee? And the term 'assignee,' as used in these statutes, applies to any one who sues

under and by the devolution of interest from another. Now, how does the plaintiff in this case obtain its interest in this policy? Not by the assignment of the policy. As has been seen, there are no words assigning the policy to it. Indeed, by his own declaration Crenshaw had nothing to assign. The property, by some deeds aliunde, was conveyed to the plaintiff. But the conveyance of the property could not assign the policy. * * * The interest in this policy was secured to the plaintiff when it was issued. That interest did not come through, but was jointly with, Crenshaw, as interest may appear. No assignment or transfer of the policy was necessary to enable plaintiff to recover; it being well settled that a policy effected by S., for account of whom it may concern, or with other equivalent terms, will inure for the benefit of the party for whom it was intended. * * * This being so, the sole question in the case is, what is the interest of the plaintiff? The answer is that by the declaration of Crenshaw, assented to and confirmed by the defendant, its interest is in the entire loss; this not because of any assignment, but because it is the sole owner of the property, and the only one to be indemnified for its loss. Its recovery, therefore, is dependent on the very terms of the policy, because of the original policy, and by these alone. This is the contract; the declaration of Crenshaw is only evidence under the contract. The complaint recognizes this. After setting out the transaction by Crenshaw, and the recognition of it by the defendant,—erroneously, as has been seen, called an 'assignment,'—it sets out the only promise alleged in the complaint, 'Thereupon the defendant promised to pay the whole loss to the plaintiff.' "

Since the Court in the *Virginia-Carolina Chemical Company* case was only faced with the problem of eliminating the plaintiff from the status of an assignee for jurisdictional purposes, it did not have to choose between the plaintiff's standing under a "new contract" or under the "original contract". But the analysis and distinction become important in the case at Bar. In this case, the plaintiff was insured to the extent of her interest by the original policy. Her interest in the property never ceased but continued throughout the whole period from the original issuance of the policy to the fire. These facts strike at the whole conception of the "new contract" which rests at least in part on a termination of the interest of the original insured. As the Court said in Ellis v. Insurance Co. of North America, 32 F. 646, 649–650 (C.C.S.D.Iowa E.D.1887):

"When the insured sells the property, that moment the policy falls. He has no insurable interest. The policy ceases to have legal force as a policy. Can it be said he is assigning that which is nothing, and that the insurance company contemplates and assents to the transfer of that which has no legal existence."

The plaintiff's status conceptually is simply different than the status of outside purchaser. The obligation to pay the plaintiff springs from the original undertaking of the insurer to insure her to the extent of her interest. Her claim does not depend conceptually on any new contract.

The plaintiff places heavy reliance on Pennsylvania Fire Ins. Co. v. Malone, 217 Ala. 168, 115 So. 156, 56 A.L.R. 1075 (1928). In that case, the original insured sold the property subject to a reservation of interest for the unpaid contract price. For the preservation of this security interest, the original insured remained covered under a special contract provision covering holders of security interests "with the consent of the [insurer]". It was held that a "new contract" arose. The plaintiff argues that this case shows it does not matter, insofar as the "new contract" concept goes, if the same party continues as an insured both prior to and subsequent to the change in ownership. But the continuing insured in the *Malone* case did not

continue in the same status under the original policy. Rather, he became a holder of a security interest and his coverage as such under the policy in that case required a new consent from the insurer, just as the purchaser's coverage required a new consent from the insurer. Moreover, the *Malone* case involved the addition of a new party in a situation where the policy was indivisible conceptually.[1] These factors are not present in the case at Bar and thus the opinion in the *Malone* case cannot control.

I am satisfied that conceptually the current case is different than the cases relied on by the plaintiff. The plaintiff's coverage in the present case stems from the original policy and should therefore be subject to defenses which have arisen during the duration of the policy.[2]

Notwithstanding the foregoing analysis, this Court is not wholly satisfied with the conceptualistic approach which has been taken by the authorities in this area and by the Court itself in foregoing discussion.

The key factor in contract law is the intention of the parties. The policy which underlies the rule of law of the plaintiff's authorities is ultimately based on an equitable feeling of justice and the presumed intention of the parties, if the question had been a subject of negotiation. While the authorities, and indeed the parties and the Court here, often discuss the problem in terms pigeonhole phrases, such as "new contract" or "endorsement" to the existing contract, it does not seem to this Court

that such categories are conclusively persuasive. They are little more than capsule statements of desired results. Indeed, what difference does it make whether the contract here is labeled a new contract or a modification of the old contract? The question here is whether the parties intended the 90 day period to include nonoccupancy prior to the defendant's "General Endorsement".

While the authorities do not analyze the problem within the frame of references of the intention of the parties, there are hints in the cases that this frame of reference has an effect on the decisions. For example, the Court in Ellis v. Insurance Company of North America, supra, at 32 F. 650 said the following:

"This is a practical question, and we must look at these matters in a practical light. When the purchaser buys the property, naturally the thought in his mind is insurance. It being his, and the old policy being dead, he looks for insurance. He finds a policy which had been in force, dead because of his purchase and cessation of the insurable interest in the assignor, yet which the insurance company is willing to have transferred to him. *Would it not be an injustice to him if, after the insurance company has consented to that transfer, it could turn back to acts done by the person from whom he obtained the policy, and claim that those acts vitiated the whole thing, and rendered it not liable to the assignee? Many policies*

1. It is interesting to note that the definition of a novation found in the Restatement of Contracts, § 424 requires inclusion of a new party. Cf. 6 Williston on Contracts (Rev. ed.) § 1866, p. 5245.

2. I have not placed any emphasis on the authorities presented by the defendant because they involve forfeitures of insurance due to alienation and the special consideration the law gives in not favoring such forfeitures. It should be noted, however, that, where there is a transfer of the interest of one co-insured to the

other co-insured, courts have not only denied a forfeiture but have permitted the transferee to recover for his full interest, including the interest acquired by the transfer, on the ground that there has been no change in risk because no new party has been introduced. Lockwood v. The Middlesex Mutual Assurance Company, 47 Conn. 553 (1880); German Mutual Fire Insurance Company v. Fox, 4 Neb.Unof. 833, 96 N.W. 652, 63 L.R.A. 334 (Sup.Ct.1903). The analogy to the present situation is apparent.

*contain the stipulation that if the house be left vacant for three months the policy shall fall. Suppose a party buys a house ignorant of its history during the time the policy has been running, and the company assents to the policy; would it not be injustice for the insurance company to thereafter say that the policy was voidable on account of the vacation of the house for three months, and although he, the purchaser, has rested in the faith that his property was insured, it will pay him nothing on the loss?* If such were the rule the assignment of policies would cease, and parties would take out in every instance new policies." (Emphasis Added).

Along the same line, Chief Judge Cardozo in Smith v. Northwestern Fire and Marine Insurance Co., 246 N.Y. 349, 159 N.E. 87, 89 (1927) said the following:

"Unquestionably the insurer will not be heard to insist upon earlier breaches, if it accepts the new owner after notice of the cause of forfeiture. * * * We think the consequence of substitution is the same whether it acts with notice or without. The result is a new contract between underwriter and owner. *The insured may reasonably infer, in the absence of inquiry as to earlier grounds of forfeiture, that the insurer is indifferent as to their existence, and is content to make a fresh start as if a new policy were written.* The fault is the insurer's, if it chooses to approve the change without adequate inquiry." (Emphasis Added).

If the problem is analyzed with reference to the basic contract philosophy of the intention of the parties, the policy behind the plaintiff's authority becomes clearer, at least in the view of this Court. Unless expressly stated in the contract to the contrary, it is, according to the policy underlying plaintiff's authorities, conclusively presumed as a matter of substantive law that the non-occupancy period commences anew at the date of the endorsement. Why should there be such a conclusive presumption of law? The answer is found in the facts of the plaintiff's cases, which involve a new party. The rule is based on the just policy that the new assignee should not have his recovery defeated by defenses predicated on violations of conditions of the policy by the assignor, for which the new assignee had no responsibility and perhaps no knowledge. It is in effect presumed in such circumstances that the parties did not intend the new assignee to be bound by prior defaults of the assignor. If they had, they would have expressly said so in the contract. Continental Ins. Co. v. Munns, 120 Ind. 30, 22 N.E. 78, 79, 5 L.R.A. 430 (1889). Courts have evidently felt that a certain rule of law was better than varying results based on the facts of each particular case. Thus, they have generally held as a matter of substantive law that a new contract is formed by the assent of the insurer to an assignment of the contract. This Court finds that at least one factor underlying that rule of law is the protection of an assignee, not a party to the original contract, based on the conclusively presumed intention of the parties.[3]

If the foregoing analysis is reasonable, it follows that the plaintiff cannot prevail on the instant motion. The plaintiff was

3. The analysis of the rule in terms of a conclusive presumption demonstrates that a rule of substantive law is not necessarily the only one available to the Courts. To be valuable, the presumption must be more than a permissive one because the Courts must be able to make consistent use of it without submission of the point to the trier of fact. But the presumption could be a mandatory presumption which is accepted as true when no counter-proof is offered as to the intent of the parties. See McCormick on Evidence, § 308, pp. 639–641 and ftnote 2 on p. 641. But, if such were the case, it would be necessary to deal with the added complication of the parol evidence rule. This may be one reason why the rule is simply stated as one of substantive law which binds the parties in the absence of their express written intent to the contrary in the policy itself.

named insured throughout the contract period. Consequently, she had a continuing responsibility for compliance with the contract terms for occupancy of the premises. The whole basis for the rule of law cited in the plaintiff's authorities, as developed in this opinion, protection of a new and innocent party, falls.

The parties had a continuing relationship since the issuance of the initial policy. Under the policy, the defendant insured the plaintiff to the extent of her interest. The "General Endorsement" by its express terms merely "amended" the contract by eliminating the name of a second insured person and it expressly provided that "All other conditions remain the same". Under these circumstances, this Court finds it impossible to hold as a matter of law that the parties intended a new contract and a fresh start as to the 90 day non-occupancy period. Indeed, the contrary result is required and the period must be computed from the date of the vacancy.

The plaintiff's motion for summary judgment is denied.

It is so ordered.