# Robinson *v.* Aetna Fire Insurance Company.

## *Action on Fire Insurance Policy.*

1. *Fire insurance; iron safe clause; production of books and inventories.*—A fire insurance company has a right to stand on the warranty contained in the iron safe clause, and to set up in bar of a suit on the policy a breach of that warranty, without any demand to produce the books and inventories, unless there has been a waiver of such breach.

2. *Same; demand for production of books.*—A demand for the production of books and inventories is not necessary, under a clause providing that "in the event of failure to produce such set of books and inventories for the inspection of the company this policy shall become null and void," when it appears that the books and inventories were destroyed by fire.

3. *Same; retention of unearned portion of premiums.*—Where there is no evidence of knowledge or notice on the part of an insurance company, prior to the loss, of plaintiff's violation of the iron safe clause, and nothing in the policy requiring repayment by the company to the assured of any portion of the premiums after the policy has ceased to be a continuing insurance by reason of the destruction of the property by fire, the retention by the company of a part of the unearned premium will not prevent it from insisting on a forfeiture by reason of a violation of the iron safe clause.

4. *Evidence; conclusion; agency.*—An agent of an insurance company may state, as a witness, that he had no other authority as such agent than that expressed in his commission, the statement not being objectionable as a conclusion.

5. *Same; same.*—The statement by a witness that as agent for defendant insurance company he had no authority other than that expressed in his commission, and had no authority to adjust losses or accept notice of loss of inventories, is not objectionable as involving a construction by the witness of his commission.

APPEAL from the Montgomery City Court.

Tried before Hon. A. D. SAYRE.

This was an action by Thomas Robinson against the Aetna Fire Insurance Company on a policy of fire insurance. The "Iron Safe Clause," referred to in the opinion, by reason of a violation of which defendant claimed that the policy had been forfeited, was in words and figures following:

"Warranty to keep books and inventories and to produce them in case of loss. The following covenant and warranty is hereby made a part of this policy: 1st. The assured will take a complete itemized inventory of stock on hand at least one in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured the unearned premiums from such date shall be returned. 2nd. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, and from date of inventory as provided for in the first section of this clause, and during the continuance of this policy. 3rd. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fire proof safe at night, and at all times when the building mentioned in this policy is not actually open for business, or, failing this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

It was claimed for plaintiff that this Iron Safe Clause had been waived by Warren & Stuart, defendant's agents, who issued the policy, by reason of a

conversation between plaintiff and Warren, the day after the fire, in which plaintiff stated to Warren that he had saved his books, but his inventories had been destroyed by the fire, and Warren replied that that was bad, but he supposed it would be all right if he could show from his books what his stock of goods was worth, which the plaintiff said he could do.

The fire occurred October 22d, 1898. On October 28th, 1898, defendant's adjuster, one Ellis, came to investigate the loss, etc., and he (for defendant) and the plaintiff entered into an agreement, styled a "Non-waiver Agreement," which provided that any action taken by the company in investigating the cause of fire and investigating and ascertaining the amount of loss and damage to the property of the plaintiff caused by said fire should not waive or invalidate any of the conditions of the policy.

The deposition of the plaintiff was also taken by said Ellis on or about October 28th, in which plaintiff stated that the inventories were destroyed by fire, and that his books were correct and the value of his stock was $1950. There was testimony tending to show that after the signing of the non-waiver agreement the adjuster examined the books with the plaintiff for some time and gave them to the plaintiff to post up, part of the cash books which had not been posted, that the plaintiff took the books home and posted them, and on bringing them back the adjuster called his attention to the Iron Safe Clause and stated that because he had not kept that he declared the policy forfeited and would pay nothing.

The commission from defendant to Warren & Stuart appointed them agents for defendant at Montgomery and vicinity "with full power to receive proposals for insurance against loss or damage by fire, to act as surveyor, or to appoint surveyors of buildings to be insured or containing property to be insured, and insurance thereon, to make by policies signed by defendant's president," etc. The certificate issued to War-

ren & Stuart by the Secretary of State on January 18th,
1898, certified that Warren & Stuart "is a duly ap-
pointed agent of the Aetna Insurance Company, and I
therefore issue this certificate to said Warren & Stuart,
authorizing them to transact the business of said com-
pany in this state for and during the year 1898."

Among the charges requested by plaintiff and re-
fused were the following (the refused charges not cop-
ied here being but repetitions of those copied), viz:
(1). "If the jury believe that Warren & Stuart ef-
fected the insurance in this case as the agents of the
defendant, and delivered the policy of insurance after
countersigning the same as the agents, and if the said
policy recites that it shall not be valid until counter-
signed by the duly authorized agent or agents of the
company at Montgomery, Alabama, and if Warren &
Stuart collected the premiums upon said policy as the
agents of said defendant, and if they received from the
Secretary of State the license shown in evidence au-
thorizing them as duly appointed agents of the said de-
fendants to transact the business of said company in
this state for and during the year 1898, and if the said
Warren & Stuart, with the knowledge of said defend-
ants, held themselves out as their agents for the trans-
action of insurance business at Montgomery and trans-
acted such insurance business by issuing policies, col-
lecting premiums and receiving notices of losses and
tranmitting them to the company, then, on these facts,
and if there are not others to qualify them, the said
Warren & Stuart would be, as to persons dealing with
them, in the line of the insurance business, general
agents of the defendants, and would be authorized to
make waivers of the conditions in the policy of insur-
ance sued upon. And I further charge you that it
makes no difference what limitations were placed upon
the authority of Warren & Stuart in their commission
or otherwise, if the plaintiff had no notice of them."
(2.) "It is a well settled principle of law that condi-
tions and duties of a person insured, prescribed in a
policy of insurance, should be liberally construed in

favor of the assured and strictly against the insurer." (4.) "That if there was no demand or requirement by the defendant, or its agents, for the production of the inventory, there was no forfeiture of the policy for its non-production, notwithstanding the original may have been lost in the fire." (6.) "That if, after the destruction of the plaintiff's store and the goods therein, the said Warren & Stuart, or either of them, being still agents of the defendant, had notice of the breach of the iron safe clause of the policy sued on by the destruction of the plaintiff's inventories by the fire, and from the fact that they were not kept in an iron safe as prescribed in the said policy, then the defendants were put upon the election to regard this policy as forfeited or as continuing as to the said stock of goods, and if, after receiving such notice, said defendants said agents said anything to the plaintiff or did any act whatever, founded on the continued existence and validity of the policy, it was a waiver of the forfeiture." (8.) "That if the insurance was effected in this case upon the payment of a premium, and the policy was still in force and unexpired when the fire occurred, the defendant could not elect to consider the policy void because of the breach of the iron safe clause therein by not producing the inventory for the inspection of the defendant, without, at the time of such election, tendering or offering to pay back the unearned premiums paid to the defendant for such policy on the merchandise." (12.) "That there would be no forfeiture for the non-production of books and inventories unless there was a failure to produce both books and inventories." (15.) "That the defendant had a right, independent of the non-waiver agreement, to investigate the cause of the fire and ascertain the amount of loss and damage to the property of plaintiff by the alleged fire without its being a waiver or invalidation of any of the conditions of the policy, unless the defendant then had notice of the breach of a condition thereof which would be waived by such investiga-

tion, and if it had notice, and whenever it received no-
tice, of such breach and forfeiture, it became the duty
of the defendant at once and without proceeding un-
der said non-waiver agreement or without further pro-
ceedings thereunder, to waive or insist on such for-
feiture and any further proceeding or investigation
inconsistent with the forfeiture would waive such for-
feiture—and any agreement by the plaintiff to extend
the time for the defendant to elect to claim the forfei-
ture after notice, and in the meantime to pursue a
course inconsistent with such relation, could be sup-
ported only by a valuable consideration."

The court gave to the jury at defendant's request the
following written charges: (1.) "The pleadings and
evidence in this case show that the plaintiff violated
the provisions of the iron safe clause set out in the
policy sued on, and unless the jury believe to their rea-
sonable satisfaction from a preponderance of the evi-
dence in this case that defendant, by its actions, waived
the said violation of said provision, they must find for
the defendant." (3.) "Before there can be any
waiver binding on the defendant of the terms of the
policy or of any of its conditions or warranties the
evidence must reasonably satisfy the jury that the de-
fendant knew of the existence of the matter waived at
the time of its making such waiver or doing the acts
relied on as constituting the same." (4.) "If the
jury believe from the evidence that defendant did not
know that plaintiff had violated the iron safe clause,
as shown in the evidence, before plaintiff stated the
same in his deposition, and that on receiving the first
notice of such violation from said deposition it de-
clined to proceed further in the investigation without
the execution of the non-waiver agreement in evidence,
then the non-waiver agreement is binding on the plain-
tiff in this case and he cannot recover for the stock of
goods destroyed." (8.) "Merely notifying or re-
questing the plaintiff to bring his books and proof of
loss, or either, to the office of the defendant's agent,
without more, was no waiver of the iron safe clause

mentioned in the policy in evidence." (9.) "The court charges the jury that if they believe the evidence in this case they must find that the plaintiff violated the provisions of the iron safe clause mentioned in the policy of insurance in evidence." (11.) "The court charges the jury that the burden of proving a waiver by the defendant of the iron safe clause in the policy sued on is on the plaintiff and he must establish such waiver by a preponderance of the testimony to the reasonable satisfaction of the jury before he can recover from the defendant in this case." (16.) "The court charges the jury that neither the certificate issued by the Insurance Commissioner, nor the certificate issued by the defendant to Warren & Stuart, in evidence in this case, gave any authority to Warren & Stuart to bind the defendant in any way by receiving notice from the plaintiff of the loss of the inventory by the fire as shown by the evidence." (20.) "The court charges the jury that unless they believe from the evidence that Warren & Stuart were, at the time they or either of them received notice of the loss of the inventory of plaintiff's goods by the fire, as stated in the evidence— if the jury believe they or either of them received such notice—the general agents of defendant, they cannot find that defendant was charged with the notice so received by Warren & Stuart." (24.) "The court charges the jury that notice to an agent of any fact given to him while engaged in the transaction of his purely personal affairs is not notice to the agent's principal."

From a judgment for defendant plaintiff appeals.

GUNTER & GUNTER, for appellant.—The loss of the original inventory by fire did not operate a forfeiture *per se*, without demand being made for its production.—*Conn. Fire Ins. Co. v. Jeary*, 51 L. R. A. 698; 30 So. Rep., 665; *Western Assur. Co. v. McGlathery*, 115 Ala. 213; *Georgia Home Ins. Co. v. Allen*, 119 Ala. 436; *Tubb v. L. & L. & G. Ins. Co.*, 100 Ala. 659;

[Robinson v. Aetna Fire Insurance Company.]

*Wakefield v. Orient Ins. Co.,* 7 N. W. 649; *Downey v. O'Donnell,* 92 Ill. 563; *Ins. Co. v. Weides,* 14 Wall. 382; *Western Assur. Co. v. Kemendo,* 60 S. W. 661; 13 Am. & Eng. Ency. Law (2d ed.), 358; *Patton v. Am. Nat. Bank,* 53 L. R. A. 693; *Viele v. Ins. Co.,* 26 Iowa, 9; *M. & M. Ins. Co. v. Armstrong,* 34 N. E. 553; *Ins. Co. v. Klewer,* 22 N. E. 489; *Carpenter v. Ins. Co.,* 16 Pet. 495, 509; *Taylor v. Mason,* 9 Wheat. 325; Tiedeman on Real Prop., sec. 274; *Piedmont, etc. Ins. Co. v. Young,* 56 Ala. 476.

The election by the defendant to retain the unearned portion of the premium is inconsistent with a forfeiture of the policy.—*Johnson v. Southern Mut. Life Ins. Co.,* 79 Ky. 403; *Wakefied v. Oriental Ins. Co.,* 7 N. W. Rep. 647; *Phoenix Ins. Co. v. Covey,* 41 Neb. 724; *Colby v. Cedar Rapids Ins. Co.,* 19 N. W. 891; *Delavigne v. U. S. Ins. Co.,* 1 Johns. Cases, 310; *N. J. R. Co. v. Com. Un. Ass. Co.,* 46 Atl. 779; *Ga. Home v. O'Neal,* 38 S. W. 63-4; *Cont. Ins. Co. v. Chew,* 38 N. E. 417; *Roberts v. Sun Ins. Co.,* 35 S. W. Rep. 955; *M. & M. Ins. Co. v. Armstrong,* 34 N. E. Rep. 556; 79 Mo. App. 362; *Norris v. Hart. F. Ins. Co.,* 35 S. E. 572; *Aetna Ins. Co. v. McGuire,* 51 Ill. 342; *Schoenemann v. Western etc. Ins. Co.,* 20 N. W. 284; 2 Cent. Dig., col. 1850.

The question to the witness Warren called for a conclusion.—*Catching's case,* 104 Ala. 176; *Reeves v. State,* 96 Ala. 33; 3 Brick. Dig., 436, § 436 *et seq.; Piedmont Ins. Co. v. Young,* 58 Ala. 476.

The first charge asked by the plaintiff should have been given.—*Catchings case,* 104 Ala. 176; *Allen case,* 119 Ala. 448; *Young case,* 58 Ala. 476; *Robinson v. Aetna Ins. Co.,* 128 Ala. 477.

The second charge should have been given.—*Young case.* 58 Ala. 476; *Tubb's case,* 106 Ala. 659; 51 L. R. A. 706; 119 Ala. 436; 115 Ala. 2?⁰

The sixth charge should have been given.—*Mag. F. Ins. Co. v. Brown,* 15 N. E. 166; *Parsons v. Knoxville Ins. Co.,* 31 S. W. 121; *M. & M. Ins. Co. v. Armstrong,*

42

34 N. E. Rep. 553; *Viele v. Ins. Co.*, 26 Iowa 9.

The 12th charge should have been given.—*Conn. F. Ins. Co. v. Jeary*, 51 L. R. A. 706.

The 8th charge given at defendant's request should have been refused.—*Ga. Home Ins. Co. v. O'Neal*, 38 S. W. 62-64; *Titus v. Ins. Co.*, 81 N. Y. 418.

The 16th charge requested by defendant should have been refused.—58 Ala. 476; 104 Ala. 176; 28 So. Rep. 646; 62 Miss. 28.

The 24th charge asked by defendant should have been refused.—*Haywood v. Nat. Ins. Co.*, 52 Mo. 181; 14 Am. Rep. 400, 407-8-9; Abbott's Trial Ev. (2d ed.), 591; 28 Cent. Dig., col. 1680.

The State license makes the agent a general agent. *Young's case*, 58 Ala. 476; *Catching's case*, 104 Ala. 176.

GORDON MACDONALD and C. P. JONES, *contra*, cited *Robinson v. Aetna F. Ins. Co.*, 128 Ala. 477; *Central R. R. Co. of Ga. v. Joseph*, 125 Ala. 313; *Capital City Ins. Co. v. Cofield*, 131 Ala. 198.

DOWDELL, J.—Questions of law involved in this case were practically all settled when here on former appeal.—*Robinson v. Aetna Ins. Co.*, 128 Ala. 477. There seems to be no substantial difference between the evidence then and now. The evidence without dispute showed a breach of the "iron safe" clause contained in the policy sued on, and which avoided the contract unless there was a waiver of the breach. Under appropriate instructions, the question of waiver being one of fact, was submitted to the jury, and a verdict rendered in favor of the defendant.

The breach of the "iron safe" clause was in the failure of the plaintiff, appellant here, to keep his inventories as provided in said clause, whereby said inventories were destroyed in the fire that occasioned the loss of the property insured.

The first contention of counsel for appellant is, and we quote from brief of counsel, that "there was no for-

feiture by the terms of the policy from the violation of the clause requiring the inventories to be kept in the iron safe, or other place not exposed to fire on the premises." This contention is based upon the proposition that no demand was made upon the plaintiff by the company for an inspection of the inventories, and this proposition is rested upon that provision in the policy which reads as follows: "In the event of failure to produce such set of books and inventories for the inspection of the company this policy shall become null and void and shall constitute a perpetual bar to any recovery thereon." The insistence is that a failure to produce must necessarily be predicated upon a demand made, and that it was not shown in evidence that any demand was made. The law never requires the doing of a useless thing. It was shown by the plaintiff himself that the inventories were destroyed in the fire, and a demand to produce for inspection was thereby rendered useless and wholly unnecessary. Moreover, the defendant company had a right to stand on the warranty contained in the iron safe clause, and set up in bar of the suit a breach of that warranty without any demand to produce the books and inventories, where there was no waiver of such breach.

The second contention in argument is, that at the time of the loss under the policy a part of the premium on the policy was unearned, and that the company could not retain the unearned portion of the premium and at the same time claim a forfeiture of the policy. There is no merit in this contention. After the destruction of the property, the policy ceased to be a continuing insurance against loss by fire, and the stipulated amount of the insurance became a debt due to the insured unless the policy had been rendered invalid by reason of a breach of the terms of the contract on the part of the assured. There is no pretense of knowledge or notice to the company prior to the loss and while the policy remained a continuing insurance, of the plaintiff's violation of the "iron safe" clause, and consequently no room for the application of the prin-

ciple contended for, that a retention by the company of the unearned portion of the premium is inconsistent with a claim of forfeiture of the policy. There is nothing in the contract of insurance which required a repayment by the company to the assured of any portion of the premium after the policy ceased to be a continuing insurance by reason of the destruction of the property by fire, before it could set up as a defense the breach of warranty contained in the provision as to the books and inventories. Nor is any such condition imposed under any principle of law.

There is nothing in the exceptions reserved to the court's rulings on the admission of evidence. The evidence by Warren, that Warren & Stuart, as agents of the defendant company, had no other authority as such agents than that expressed in the commission was clearly relevant, and it was competent for the witness to so state, without any infringement of the rule as to stating conclusions. It was equally competent for the witness to state that he had no authority as agent to adjust losses, or to accept notice of loss of inventories It is not made to appear from the record that the statement involved a construction by the witness of the commission to the witness as agent.

The court in the charges given at the request of the defendant, and in its refusal to charge as requested by the plaintiff acted in conformity with the law of the case as laid down on the former appeal and as herein above stated. We have carefully considered both the given and refused charges, and as there are quite a number of them, and since no purpose is to be subserved by treating of them in detail, we content ourselves with what we have said above.

We find no error in the record, and the judgment will be affirmed.

# MEMORANDA

## OF

CASES DECIDED DURING THE PERIOD EMBRACED IN THIS
VOLUME, WHICH ARE ORDERED NOT TO BE
REPORTED IN FULL.