144 So. 439

### SUSSEX FIRE INS. CO. v. BARTON.
#### 6 Div. 151.

Supreme Court of Alabama.
Nov. 10, 1932.

---

[1] Ante, p. 558.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

Davis & Curtis, of Jasper, for appellee.

**BOULDIN, J.**

The action is on a policy of fire insurance. A storehouse, stock of merchandise, and store furniture and fixtures were insured in the gross sum of $3,500. The insurance on the house was $1,000, on the stock of merchandise $2,000, and on the furniture and fixtures $500.

Count 1 of the complaint was in code form, claiming the gross sum for a total loss of the insured property by fire.

 Defendant· presented certain special pleas setting up breaches of the iron-safe clause as a full answer to the complaint. Admittedly the iron-safe clause is limited to the stock of merchandise, but the theory of these pleas is that count 1 must be construed as an action on an entire, indivisible contract, and a breach of same goes to the entire cause of action.

This question was ruled differently in Globe & Rutgers Fire Ins. Co. v. Pappas, 219 Ala. 333, 122 So. 346. Though divisible, and a recovery allowable for loss of house and fixtures, or either, notwithstanding a good defense as to the stock of merchandise, yet· the contract is one, and under our system the code form applies. Breaches of the iron-safe clause must be limited to the stock of merchandise.

In Rhode Island Ins. Co. v. Walden, 217 Ala. 510, 116 So. 693, the claims for the several lessees under a similar policy were presented in separate counts. The case merely holds the contract divisible, that each indemnity is in effect a separate insurance, so that special defenses applicable to one, may not be good as to the others. We discover no conflict between this and the Pappas Case, supra.

■ Count 2 of the present complaint merely elaborates count 1 by setting out the amount of insurance allotted to each item or class of property insured under the one policy. This count is good against demurrer. Code, § 9531.

The iron-safe clause of the policy reads:

"The following covenant and warranty is hereby made a part of this policy:

"1. The assured will take a complete itemized inventory of stock on hand at least once in each calendar year and, unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within 30 days of issuance of this policy, or this policy shall be null and void from such date, and returned.

"2. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"3. The assured will keep such books and inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the premises mentioned in this policy are not actually open for business; or, failing in this the assured will keep such books and inventories in some place not exposed to a fire which would destroy the property hereby insured.

"In the event of failure to produce such set of books and inventories for the inspection of this Company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

The policy was issued January 1, 1931, for the term of one year.

Defendant interposed numerous pleas directed to the loss on the stock of goods alleging breaches of the requirement to keep and produce an inventory and books as stipulated.

To these pleas plaintiff interposed replications to the effect that no inventory had been taken within twelve calendar months prior to the date of the policy; that no inventory had been taken after the issuance of the policy; that the property was wholly destroyed by fire within less than thirty days after the issuance of the policy; and, therefore, there was no breach in failing to safely keep and produce an inventory and books showing purchases and sales thereafter. The sufficiency of these replications as against demurrer is much argued by appellant.

■■ The iron-safe clause, designed to furnish record evidence kept in due course of business in aid of an adjustment of the loss and to prevent fraud, is valid, and to be given the effect intended by the parties. But, like provisions of insurance contracts are to be construed favorably to the insured when relied upon as ground of forfeiture.

■■ "The last preceding inventory" mentioned in paragraph (3), supra, appearing in a one-year policy, and applied to an inventory taken before the policy was issued, means an inventory taken within the last twelve months, and referred to in paragraph (1). Such an existing inventory, safely kept and produced, excuses the taking of another within thirty days after the policy issues. Any stipulation that an inventory taken in former years, back of the twelve-month period, and that books be kept and produced following up such inventory, should be clear and unambiguous. Pennsylvania Fire Ins. Co. v. Malone, 217 Ala. 168, 174, 115 So. 156, 56 A. L. R. 1075; Western Assurance Co. of Toronto v. McGlathery, 115 Ala. 213, 224, 22 So. 104, 67 Am. St. Rep. 26; 3 Cooley's Briefs on Ins. (2d Ed.) p. 2810; Continental Insurance Co. of N. Y. v. Waugh, 60 Neb. 348, 83 N. W. 81. See 3 Joyce's Law of Insurance, § 2063–1.

Manifestly, by the express terms of the contract, the books required to be kept and produced, relate to business transacted after the inventory is taken. The two constitute the record from which the quantum and value of the stock may be reasonably ascertained by the adjuster with the aid of information, if needed, touching the system of bookkeeping employed. The application of the provision to books kept before the issuance of the policy and following an inventory taken within twelve months theretofore is not involved and not decided.

■ Where, as here, there was no inventory taken within the twelve-month period, and the property was destroyed by fire before the thirty-day period had elapsed, there was no breach for failure to produce either inventory or books kept before or after the issuance of the policy. The replications above mentioned were good answers to the pleas to which they were addressed.

■ For like reasons plea 25, alleging that, when the policy issued, the insured had in hand an inventory taken in February, 1929, nearly two years before the date of the policy, and a set of books showing purchases and sales, etc., thereafter, but that they were not kept in a fireproof safe and were destroyed in the fire, was properly stricken on demurrer.

Other replications sought to set up a waiver of the alleged breach of the iron-safe clause by the adjuster. The sufficiency of these replications, as against demurrer, under our decisions touching waiver and es-

toppel, such as Pennsylvania Fire Ins. Co. v. Malone, supra; Great American Ins. Co. v. Dover, 219 Ala. 530, 122 So. 658, we need not decide. There was no evidence of a breach of the iron-safe clause. The undisputed evidence was that no inventory had been taken since early in 1929, and that the fire occurred on January 16, 1931, less than thirty days after the issuance of the policy.

The taking of an invoice of a small stock purchased in 1930 and added to the stock on hand, as testified to by witness Holt, was not, as matter of law, taking the inventory contemplated by the contract. Manifestly, this invoice, if produced, would have been no compliance with the iron-safe clause.

We are of opinion the court erred in receiving in evidence the alleged adjustment of the loss by Mr. Bishop. We note the jury's verdict is for the amount agreed upon with him. The evidence did not warrant a finding that he was authorized to adjust this loss by the defendant, nor by any one with authority to name an adjuster.

The record discloses there was some delay in making an adjustment because of sickness of the state agent, Mel. Smith. This led to written instructions to local agents that the adjustment had been referred to the Fire Company's Adjustment Bureau. Local agents were authorized to get in touch with Mr. Smith, and, failing therein, to get in touch with the bureau or the company direct. It further appears the state agent, being sick, referred the local agents to the adjustment bureau. It appears Mr. Bishop was not named by the adjustment bureau, but by a brother of the general agent, not connected with the insurer nor the adjustment bureau, nor shown to have any delegated authority from his brother, the state agent; nor, for that matter, does it appear the general agent could delegate authority to select an adjuster, or, at any rate, one not shown to be connected with the adjustment bureau.

The fact that Mr. Bishop had in his office blanks of defendant company for proofs of loss, helped fill same out, and called some unknown person by telephone at an unknown place before concluding the adjustment, does not prove his authority to adjust, especially when, so far as the evidence goes, he derived his supposed authority from one without authority in the premises.

The trial court further erred in admitting evidence of plaintiff that the money paid on the premium had never been returned to him.

The issues on which the case was tried were a breach of the iron-safe clause, as to which we have held there was no evidence, and the willful burning of the property by the plaintiff. The latter is the vital issue in the case.

There was no duty on the insurance company to refund the unearned premium under either issue. Robinson v. Ætna Fire Ins. Co., 135 Ala. 650, 34 So. 18; Security Ins. Co. v. Laird, 182 Ala. 121, 62 So. 182; North River Ins. Co. v. Waddell, 216 Ala. 55, 112 So. 336, 52 A. L. R. 838.

Clearly parol evidence of the market value of the property at the time of the loss was admissible. This was the measure of recovery, if any.

Even if inventory and books had been kept and produced, they would not have been conclusive on the question of loss. Insurance Company of North America v. Williams, 200 Ala. 681, 77 So. 159, and other cases to like effect, relied upon by appellant, deal merely with parol evidence admissible in aid of an understanding of the books and inventory, evidence going to their sufficiency as a compliance with the iron-safe clause.

A witness, whether merchant or not, having a general knowledge of the stock carried, and of the prices at which such articles are usually sold, and such observation of the quantity of such goods as will enable him to form a reasonable judgment thereon, is competent to give his opinion as to the value of a stock of goods of this character, running less than $5,000 in value.

The weight to be accorded the testimony of the several witnesses on this issue is to be determined by the jury in the light of all the evidence.

Evidence of general bad character is admissible for impeachment of a witness. 14 Michie's Digest, p. 1163, § 251.

The record contains 463 assignments of error, most of them argued separately or in groups by voluminous brief. Most of them are ruled by principles announced in this opinion; others are clearly without merit, and others will probably not arise on another trial. What has been written will, we think, be a sufficient guide. The opinion need not be further extended.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.