The defendant appeals from a judgment of the trial court affirming an arbitration award to the plaintiff in the amount of $96,243.00. We affirm.
The plaintiff's restaurant building was insured against fire by a policy issued by the defendant. The insuring (or limitation) clause provided that the building was insured:
 [t]o the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality. . . .
The policy also contained an appraisal provision stating in part:
 The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; . . . An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. . . .
The restaurant was damaged by fire and because of a disagreement on the amount of the loss, the insurer and the insureds appointed appraisers in accord with the policy provisions. An umpire was appointed by the trial court. After these three made an arbitration award, the insureds petitioned the circuit court for a judgment on the award, and following the filing of the insurer's answer, the trial court held a hearing. That court interpreted the limitation clause of the policy to allow the reasonable cost of repair not exceeding the actual cash value of the building. The trial court also held that the policy provisions which referred to the actual cash value and loss to each item meant actual cash value and loss tothe building as an item, rather than to each item comprising the building. The arbitrators then entered an amended award establishing the actual cash value of the building at the time of loss at $161,000.00, and the appraised loss to the building at $96,243. At a hearing held on this amended award both appraisers testified that it would not be possible to separately appraise the "actual cash value" of each component part of the building. At the conclusion of this hearing the trial court's judgment confirmed the amended award.
The defendant contests the two interpretations of the policy provisions made by the trial court, and so the issues before us are:
(1) Whether the limitation clause establishes the measure of recovery as the reasonable costs of repairs when those costs do not exceed the actual cash value of the entire building, and
(2) Whether these policy provisions allow a building to be construed as an "item."
According to the defendant, all that the appraisers did was to determine replacement and repair cost. They did not attempt to establish actual cash value which, defendant maintains, involves either an allowance for depreciation or a finding of market value. Defendant cites us to Reliance Ins. Co. v.Orleans Parish School Board, 322 F.2d 803 (5th Cir. 1963) for the Louisiana rule which follows repair or replacement cost less depreciation. We are also referred to our own case ofGlens Falls Ins. Co. of New York v. Garner, 229 Ala. 39,155 So. 533 (1934) for the statement contained in that opinion, that actual cash value "means, and can only mean, what the thing is worth in money, allowing for depreciation." An earlier case, Sussex Fire Ins. Co. v. Barton, 225 Ala. 570, 574,144 So. 439 (1932), contains a dictum recognizing market value as the measure of recovery. Those Alabama cases do not set out the specific policy provisions for our comparison with those applicable here, and, indeed, the plaintiff does not quarrel with those statements, but takes the position that they are inapplicable here. The plaintiff's position is that this particular clause limits the total amount for which the entire building is insured to the actual cash value of that building, rather than establishing actual cash value as a measure of loss. This ceiling, *Page 686 
plaintiff asserts, does not otherwise limit cost of repair as the measure of loss, according to the terms of the policy. That is, the measure of recovery is the cost of replacement or repair up to but not exceeding the actual cash value of the building at the time of the loss.
We believe that the interpretation given to identical policy terms in Great American Ins. Co. v. Railroad Furniture Salvageof Mobile, Inc., 276 Ala. 394, 400, 162 So.2d 488, 494 (1964) controls here. In that case a windstorm policy provided coverage:
 `To the extent of the actual cash value of the property at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality. . . .
Describing this provision as "certain and free from ambiguity," this Court added:
 It expressly limits the damages for which the defendant is liable to the actual cash value of the property at the time of loss, but not to exceed the cost of repair, or replacement with goods of like kind within a reasonable time after loss. (emphasis added)
That interpretation is the rule in Alabama upon the measure of damages under such a policy when the insured sustains a partial loss. This view finds support in other jurisdictions. Accord,Glens Falls Ins. Co. v. Gulf Breeze Cottages, 38 So.2d 828, 830
(Fla. 1949), where the Court observed:
 Bearing in mind that the purpose of the contract was to indemnify the owner against loss, . . . the property should have been placed in as nearly as possible the same condition that it was before the loss, without allowing depreciation for the materials used. Certainly it was not intended that the repairs should be made with materials which were not new. If depreciation were allowed, it would cast upon the owner an added expense which we do not believe was contemplated by the parties when they entered into the insurance contract.
We also conclude, as did the trial court, that an itemized account of the components which made up the damaged building was unnecessary; that is to say, it was proper for the appraisers to compute the loss to the building as one item. The pertinent policy provision is:
 In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a component and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. . . .
This identical language was contained in the insurance policy whose terms were in issue in Phoenix Assurance Company of NewYork v. Singer, 221 F. Supp. 890, 892 (E.D.Mo. 1963). As in the case before us, it was there argued by the insurance company that the policy required more than a monetary amount representing the loss to the dwelling. The Court rejected that contention at page 893:
 Under plaintiff's apparent interpretation, the appraisers would be required to itemize minutely the actual cash value of each part of the building immediately prior to the fire as well as the loss. But the agreement did not provide for any further breakdown than the one item, the dwelling in question. . . .
In the case before us as well, there is only one item referred to under "Coverage A-Building(s)," and that is "Loc. No. 1 Bldg. No. 1," described as a "Restaurant *Page 687 
Lounge." And as the United States Court of Appeals stated in affirming the Phoenix decision:
 We agree that the word `item' refers to items as listed in the policy and not to a detailed specification of all of the minute elements of damage giving rise to the total damage with respect to each item listed on the policy. (331 F.2d 10, 12, 8th Cir. 1964).
Accord, Campbell v. Union Mut. Fire Ins. Co., 124 A. 469 (R.I. 1924).
The issues having been correctly decided by the trial court, his decision is due to be, and is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.