[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 600 
This is a consolidation of appeals by defendants State Farm Fire and Casualty Company and Reliance Insurance Company from a final decree in a nonjury trial in favor of the plaintiff Substation Products Company for fire loss. The court found that the defendants were jointly and severally liable in the amount of $187,496.51
On November 1, 1977, Substation Products Company leased a lot and office building/warehouse at 2912 Lomb Avenue in Birmingham to James H. Dennis, Sr. The lease provisions prohibited Dennis from subleasing or assigning without written consent by Substation and obligated Dennis to insure the premises for 90% of the full insurable value of the building and to provide that the insurance should run jointly in favor of the lessor and lessee and should be applied to the restoration of the building. Dennis was required to give Substation a copy of the insurance policy and proof of payment thereon
Prior to Dennis's going into possession, Substation installed heaters and lights as improvements on the property at a cost of $2,100.00. Dennis, without the prior written consent of Substation, assigned his interests in the lease to Dennis Mining, a corporation wholly owned and managed by Dennis Dennis Mining then made improvements to the office portion of the building valued at approximately $17,000.00
In July, 1978, Dennis contacted Terry Henley (who was also a defendant in this lawsuit), an insurance agent for State Farm, and applied for insurance on the property. Through the efforts of Henley, State Farm issued a special multi-peril policy insuring Dennis Mining Supply and Equipment. The effective policy period was July 24, 1978, to July 24, 1979. The policy insured the building for $175,000.00 with an 80% co-insurance clause and the contents for $25,000.00 with the same co-insurance provision. There was conflicting testimony whether Henley knew that Substation, not Dennis, was the owner of the property. Substation was named as mortgagee in the policy. The State Farm policy stated that it was "void if, . . . before or after loss, the insured . . . willfully concealed or misrepresented any material fact or circumstance . . . or the interest of the insured . . . or any fraud by the insured."
In late August, 1978, State Farm decided to cancel the policy because a Dunn and Bradstreet report on Dennis Mining revealed adverse financial background information. The report also indicated that Dennis Mining rented the property. State Farm's fire underwriter, Mack Terry, was instructed to cancel the insurance and mail to Substation a ten-day notice of cancellation. At the request of Henley, Terry agreed to refrain from mailing Substation notice of cancellation and allowed Henley to see if he could obtain a request for cancellation from Dennis
Henley obtained the properly-signed cancellation request form from Dennis Mining but then lost it. There was disputed testimony whether Substation and Henley had conversations concerning the State Farm coverage after Dennis had signed the cancellation request. Substation maintained that they made numerous telephone calls to Henley informing him of their ownership of the property and requesting a copy of the State Farm policy. There is evidence that Henley repeatedly assured them that the policy would be forthcoming. Henley denied any such conversations
The policy was received by Substation in late September or early October, 1978. Substation did not review the details of the policy but merely checked the amount of the coverage and that their name appeared on the policy
After Henley had received the cancellation request form, insurance was written on the property by other carriers, through the *Page 602 
efforts of a friend of Henley, Tony Craft. Craft was an insurance salesman for The Nolen Agency, which serves as an agent for several insurance companies, including Reliance
In November, 1978, Reliance issued a policy which cited Dennis Mining as named insured and as owner of the building and contents. The policy provided $150,000 limits at 90% co-insurance on the building and $90,000 for contents. It had an effective date of November 30, 1978, through November 30, 1979. Substation was not mentioned in the policy
There was conflicting evidence whether Craft had knowledge of both the prior State Farm policy and Substation's interest in the land at the time of issuance
After receipt of the original policy, Dennis requested additional coverage on some other items. On December 28, 1978, Craft gave Dennis a letter confirming the changes and increases written on a separate "inland marine" policy. The copy of the letter introduced at trial included the words "Added Substation Products as lienholder on property" in the body of the letter but in a different typeface. Craft denied typing the language onto the letter. An employee of Dennis, Andy Shaddix, testified that he reminded Craft at the time of delivery of the letter that the language had to be included and that he and Dennis watched him type it in
On January 2, 1979, the building and contents were severely damaged. The cause was arson
After the fire, State Farm instructed Henley to prepare a new cancellation form to replace the lost one, to back date it to August 21, 1978, and have Dennis sign it. Thereafter, Substation was visited by a State Farm investigator who informed them that State Farm would not pay the claim to Substation because Dennis had cancelled the policy on August 21, 1978
Thereafter, however, on or about January 18, 1979, State Farm notified Dennis of the rescission of the policy based on two factors: (1) Alleged misstatements of no prior cancellations by Dennis Mining; and (2) alleged misstatements that Dennis Mining had no prior losses
Accompanying the rescission letter was a check for the return premium made payable to Dennis personally. In February, 1979, Reliance cancelled its policy, retroactive to November 30, 1978
On January 18, 1979, Substation filed a complaint against State Farm, Henley, Reliance, Craft, The Nolen Agency, and Dennis, seeking damages for misrepresentation and breach of contract. Following a petition to the Supreme Court, Ex parteReliance Insurance Co., 380 So.2d 266 (Ala. 1980), the Court ordered a jury trial for Craft and Nolen, and Reliance filed a cross bill against Dennis. Dennis then filed a separate suit against Reliance, Nolen, Craft, State Farm, and Henley. The cross bill and Dennis's suit concerned the Reliance policies on the contents of the building. Reliance wanted them declared null and void, and Dennis wanted to recover on them. Dennis's suit was dismissed for failure to have asserted it as a compulsory counterclaim to the Substation suit, and his motion to consolidate his suit with the Substation suit was denied After the court heard the Substation suit ore tenus, in its final decree it ordered:
 1. That the Reliance Insurance Company policy as originally issued on or about November 30, 1978, was in full force and effect on the date of the fire loss, to-wit: January 2, 1979, to the extent of the coverages originally set forth therein
 2. That the "inland marine" policy issued, or bound, and the increases in coverages occurring in late December, 1978, were not in force on the date of the fire, to-wit: January 2, 1979, and therefore, Reliance is not bound to afford coverage to Dennis Mining Equipment Company thereupon
 3. That the Plaintiff is entitled to a joint and several judgment against State Farm Fire Casualty Company and Reliance Insurance Company in the amount of $187,496.51 *Page 603 
 4. All other relief prayed for by the parties in this action, not specifically set forth hereinabove, is otherwise denied and overruled
Reliance and State Farm appealed
In its appeal, Reliance first argues that the court committed reversible error by reforming the policy of insurance issued by Reliance and naming Substation as an insured because Substation failed to meet the burden of defeating the presumption that the written instrument was the true agreement of the parties Reliance contends that according to Alabama law, Substation had the burden by proving a mutual mistake beyond a reasonable doubt and by clear, convincing, and satisfactory evidence and, consequently, that Substation did not meet its required burden of proof because of the great weight of disputed evidence. In support of its contention, Reliance cites Hammer v. Lange,174 Ala. 337, 56 So. 573 (1911), which states:
 "The authorities all require that the parol evidence of the mistake and of the alleged modification must be most clear and convincing — in the language of some judges, `the strongest possible' — or else the mistake must be admitted by the opposite party; the resulting proof must be established beyond a reasonable doubt."
174 Ala. at 340, 56 So. 573
We hold that proof "beyond a reasonable doubt" is not required in a case like this. To apply it would impose a criminal law standard in a civil case. It has long been the law in Alabama that in order to warrant relief by reformation, the burden on the complainant is to show by clear, exact, convincing, and satisfactory evidence that the instrument does not express the true agreement of the parties, and also what, in fact, the parties intended that the wording should containNall v. Nall, 382 So.2d 575 (Ala.Civ.App. 1980); OriginalChurch of God, Inc. v. Perkins, 292 Ala. 283, 293 So.2d 292
(1974); Duckett v. Lipscomb, 287 Ala. 668, 255 So.2d 12 (Ala 1971)
Reliance then argues in effect that even if the standard is less than that of beyond a reasonable doubt, the evidence in favor of a mutual mistake was not as credible as that against it, and as such the court should be reversed. We cannot agree
Where a trial court has heard evidence ore tenus, its findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust, and such rule is especially applicable in cases in which the trial court makes its findings of fact after hearing conflicting evidence; every presumption will be indulged in favor of the court's findings, and those findings will not be disturbed unless palpably wrong. Leslie vPine Crest Homes, Inc., 388 So.2d 178 (Ala. 1980)
Also, on an appeal from a judgment entered without any specific findings of fact, the Supreme Court assumes that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous and against the great weight and preponderance of the evidenceO'Connor v. Rabren, 373 So.2d 302 (Ala. 1979)
There was sufficient evidence presented that if believed by the court would meet the standard of proof required. Craft was the agent of Reliance and, therefore, Reliance is charged with his knowledge. If the trial court believed the testimony of Dennis and Shaddix in conjunction with other circumstantial evidence, Craft not only had a copy of Dennis's prior State Farm policy in his file at the time he wrote the fire insurance on the building, but also had been told to name and protect Substation's interest in the property. Also there was evidence that Craft had added Substation's name on the December 28, 1978, letter confirming coverage thereto as a "lein [sic] holder." Therefore, since there was evidence that Dennis intended to insure Substation's interest in the property, manifested by his instructions to Craft, and there was evidence that Craft intended to protect the interest of the owner of the property, we can find no reason to reverse the trial court's reformation of the policy *Page 604 
Reliance also argues that the trial court erred in not declaring the insurance policy void because under our law, misrepresentations will void a policy of insurance if the representations are false, made with actual intent to deceive, or increase the risk of loss for the hazard assumed, and the insurer detrimentally relied on the representations. Reliance also notes that the policy itself provided:
 4. Concealment or fraud. This policy is void if insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance
We agree that the general rule is that an intentional misrepresentation by the applicant of material facts relied on by the insurer permits the insurer to avoid the policy However, the well-recognized exception to this rule is: The policy is not avoided if the insurer knows the facts, or the falsity of the statements, or has sufficient indications that would put a prudent person on notice so as to induce an inquiry which, if done with reasonable thoroughness, would reveal the truth. Banker's Life and Casualty Co. v. Long, 345 So.2d 1321
(Ala. 1977)
As pointed out previously, there is conflicting evidence as to the representations that Dennis made to Craft at the time of the issuance of the initial insurance. If the evidence was viewed in the light most favorable to Dennis, his statements during that period, although ambiguous, e.g., "I don't owe a penny to anyone on anything," do not amount to actual misrepresentations
Also the evidence as discussed under Reliance's first argument was enough to show that Reliance, through its agent, Craft, had sufficient indications so as to induce further inquiry, and, therefore, fall within the exception to the general rule
Therefore, we cannot find that the court was palpably wrong in not holding that the initial insurance policy was void Furthermore, although Reliance spent considerable time in its brief pointing out misstatements made by Dennis regarding coverage for a drill rig, such misrepresentations concerned additional coverage under the "inland marine" policy, and came after the initial fire policy covering the building at 2912 Lomb Avenue. The trial court did not permit recovery by Dennis on these increases and only sustained the November 30, 1978, policy as to coverage originally set forth therein; therefore, we need only examine the statements made concerning the initial policy to review the trial court's decision under the ore tenus rule
Reliance next argues that the court committed reversible error by failing to grant Reliance a jury trial on its cross bill for declaratory judgment filed against Dennis and Dennis Mining
This issue has been before this Court on a petition for writ of mandamus in Ex parte Reliance Insurance Co., 380 So.2d 266
(Ala. 1980). The petition sought to set aside an order issued by the trial court which, pertinent to this appeal, denied Reliance, Nolen, and Craft the right to a jury trial and refused Reliance's motion for permission to file a cross claim, adding as an additional party, Dennis Mining. This Court directed the trial court to grant the motion for the cross bill to add Dennis Mining as an indispensible party
As to the issue of the right of Reliance to a jury trial, we held:
 Reliance filed its answer to Substation Products' complaint on May 11. A jury demand was not made at that time. On June 4 Reliance filed a cross-bill in which it requested that Dennis Mining Supply and Equipment, Inc., be added as an indispensable party No other new issues were raised in this cross-bill On June 12, Reliance made a demand for a jury trial on all issues triable by a jury
 For Reliance's June 12 jury demand to be timely it must have been made within thirty days following Reliance's answer to Substation Products' complaint It would also have been timely if the cross-bill had contained new issues not raised in the Substation Complaint. Since neither of the above has occurred Reliance's jury demand must be found not to have been timely filed *Page 605 
On January 24, 1980, the trial court allowed Reliance to file its cross bill adding Dennis Mining as a party, and it was served in open court on Dennis in behalf of himself, individually, and of Dennis Mining. On February 21, 1980, Reliance again filed a demand for a jury trial on all issues raised in the cross bill. Substation's motion to strike the jury demand was granted by the trial court
Reliance argues that a jury trial should have been granted because the cross bill does in fact contain new issues because the original complaint filed by Substation against Reliance dealt only with the policy of insurance which covered the building, while the cross bill against Dennis and Dennis Mining sought to have all the policies issued by Reliance to Dennis Mining declared void, including those covering the equipment and automobiles. Therefore, it argues that since the cross bill was the first pleading which brought into issue the other insurance policies, its filing of a demand for a jury trial on February 21, 1980, was timely and should have been granted
We note, however, that the very same cross bill was before this Court in Ex parte Reliance Insurance Co., supra. The argument which Reliance now makes could have been presented at that time before the prior judgment was rendered on the merits
The elements of res judicata are a prior judgment rendered by a court of competent jurisdiction; the prior judgment rendered on the merits; the parties to both suits substantially identical; and the same cause of action present in both suitsWheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190
(Ala. 1978)
Additionally, a judgment in a former action between the same parties is not only conclusive of questions actually litigated, but also of those which could have been litigated in the former suit. Educators' Inv. Corp. of Alabama, Inc. v. Autrey,383 So.2d 536 (Ala. 1980)
Therefore, we find the principles of res judicata to be present here thereby precluding Reliance's asserting error by the trial court's denial of a jury trial
State Farm argues that the court erred in holding State Farm liable to Substation under the policy issued to Dennis Mining because of several reasons
First, State Farm argues that Dennis Mining had no insurable interest in the building since the lease agreement between Substation and Dennis precluded any transfer of interest without written approval by Substation, and no such approval was given. Therefore, since Dennis Mining did not have an insurable interest in the premises, the policy was void and can provide no basis for recovery for Substation
State Farm also contends that Dennis's misrepresentations to State Farm of his company's and Substation's interest in the insured premises were material misrepresentations which voided the policy ab initio as to Dennis, as it follows that Substation cannot be entitled to recovery unless its rights were separate from the named insured
We note that Substation was designated as mortgagee in the policy, and the mortgage clause in the policy states: "[T]his insurance as to the interest of the mortgagee (or trustee) only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property."
However, State Farm believes that Substation cannot benefit from the mortgagee clause because Substation was not and never had been the mortgagee, and, therefore, its own claim was derivative of Dennis's claim
State Farm lastly reasons that notwithstanding their prior argument, any protection that Substation might have through the mortgagee clause is cut off due to Substation's acquiescence in Dennis's misrepresentations evidenced by its knowledge that the policy was issued to Dennis Mining, not to Dennis individually, and also that the policy listed Substation as mortgagee and not owner
Once again, after applying the ore tenus rule as set out inO'Connor v. Rabren, supra, *Page 606 
we cannot find that the trial court erred in holding State Farm liable to Substation under the policy issued to Dennis Mining
First of all, there was sufficient evidence, both direct and circumstantial, presented to show that Substation had waived the approval requirement through its knowledge of Dennis Mining being the actual tenant, manifested by its acceptance of Dennis Mining's rental checks. As such, an insurable interest would clearly exist
Also, there was enough evidence, albeit disputed, for the trial court to find that State Farm, through its agent, Henley, had knowledge of Substation's interest as owner of the premises and that State Farm, notwithstanding that knowledge, mistakenly noted Substation's interest as mortgagee on the policy
Errors or omissions made by employees of State Farm, whether in the preparation or processing of the application or in the actual issuance of the policy, cannot be the basis for its later denial of the claim. See, United Security Life Ins. Cov. St. Clair, 41 Ala. App. 243, 130 So.2d 213 (1961)
Therefore, the fact that Substation's name only appeared in the policy as mortgagee does not preclude the trial court from finding that it did have a recoverable interest under the policy. However, it is important to note that the trial court in its ruling found that State Farm and Reliance were jointly and severally liable to Substation. Therefore, the court could have found State Farm liable to Substation in tort rather than under a contract theory. Because there was no finding of fact by the judge, there is no way to know precisely what he based his determination upon
This raises an issue jointly argued by the defendants. Both maintain that a review of the two policies clearly discloses that the trial court committed reversible error in holding that State Farm and Reliance were jointly and severally liable to Substation
The Reliance policy under "other insurance" provides:
 (a) If at the time of loss there is other insurance written in the name of the insured upon the same plan, terms, conditions and provisions as contained in this policy, herein referred to as Contributing Insurance, the Company shall be liable for no greater proportion of any loss than the limit of liability under this policy bears to the whole amount of insurance covering such loss
 (b) If at the time of loss there is other insurance other than that as described in (a) above, the Company shall not be liable for any loss hereunder until:
 (1) the liability of such other insurance has been exhausted, and
 (2) then for only such amount as may exceed the amount due from such other insurance, whether collectible or not
The State Farm "other insurance" clause provides:
 1. Loss by fire or other perils not provided for in 2 below: If at the time of the loss, there is other insurance available to the insured or any other interested party covering such loss or which would have covered such loss except for the existence of this insurance, then the Company shall be liable as follows:
 a. If such insurance is Contributing Insurance, defined as any insurance written in the name of the insured, upon the same plan, terms, conditions and provisions as contained in this policy whether collectible or not, the Company shall be liable for no greater proportion of any loss than the limit of liability under this policy bears to the whole amount of insurance covering such property
 b. If such insurance is Specific Insurance, defined as any insurance other than that described as Contributing Insurance in a. above, the Company shall not be liable for any loss hereunder until the liability of such Specific Insurance has been exhausted, and then shall cover only such amount as may exceed the amount due from such Specific Insurance (whether collectible or not) after application of *Page 607 
any contribution, coinsurance, average or distribution or other clauses contained in policies of such Specific Insurance affecting the amount collectible thereunder, not exceeding however, the applicable limit of liability under this policy
The defendants argue that since the trial court has held them jointly and severally liable, the other insurance provisions of each policy must be considered in awarding Substation damages, and that where each policy contains such a pro rata clause, any judgment against the two companies must prorate the loss between the two insurers. In support, they cite NationwideMutual Fire Insurance Co. v. Wilborn, 291 Ala. 193,279 So.2d 460 (1973), which states:
 If the policies of two insurance companies are in force at the date of the loss and the status of the two insurers is that of insurers of the same property of the same insured against the same hazard, they are each proportionately and severally liable for the loss at the ratio which the amount of their respective policies bears to the whole insurance covering the property against the perils involved
279 So.2d at 466
State Farm and Reliance have correctly identified the law in Alabama in regard to when more than one insurance company is found liable to an insured under their policies. If Substation had only sued under the respective policies, such would have to be the case here. However, Substation also included tort claims in its complaint against State Farm and Reliance. In its action against State Farm, Substation claimed:
COUNT FOUR
 1. The Plaintiff adopts and incorporates herein all of the words, figures, and allegations contained in Count One above and adds thereto the following:
 2. That the Defendants Henley and State Farm concealed material information from the Plaintiff in that the said Defendants concealed the fact that Dennis had requested a cancellation of the State Farm policy
 3. That the said Defendants Henley and State Farm misrepresented during the months of September and October, 1978 that the policy of insurance issued by State Farm in which the Plaintiff was designated as a loss payee was in full force and effect
 4. That the Plaintiff relied upon such representations and relied upon the concealment of material facts as alleged above and did not obtain other or different insurance for its protection
 5. That in reliance thereupon and as a result of a fire loss on or about January 2, 1979, the Plaintiff has been materially damaged and substantially damaged in the amount of $175,000.00
 WHEREFORE, Plaintiff demands judgment against State Farm Fire and Casualty Company and Terry Henley in the sum of $175,000.00, interest and costs. Plaintiff demands punitive damages of $500,000.00
COUNT FIVE
 1. The Plaintiff adopts and incorporates herein all of the allegations contained in Counts One and Four of this Complaint and adds thereto the following:
 2. That it is believed and upon such information and belief averred that the Defendant State Farm Fire and Casualty Company has entered into a written agreement or covenant with Dennis either in his individual capacity or doing business as Dennis Mining Supply and Equipment, Inc. wherein and whereby said Dennis will make no claim against said policy of insurance issued by State Farm
 3. That such agreement is an attempt to alter, modify, abrogate or prejudice the rights of the Plaintiff in and to said policy of insurance and the benefits to be derived therefrom under the terms therein contained
 4. That the refusal of the Defendant State Farm Fire and Casualty Company to pay the Plaintiff's fire loss under the terms and conditions of its policy of fire insurance coupled with State Farm Fire *Page 608 
and Casualty Company's concealment of material facts coupled with the lack of notice of cancellation to the Plaintiff coupled with its side agreement or separate covenant with Dennis amounts to and constitutes bad faith for which the Plaintiff claims damage in the amount of $175,000.00 and punitive damages in the amount of $500,000.00 and the costs of this action
Substation's tort claim against Reliance states:
COUNT SEVEN
 1. The Plaintiff adopts each and every word, figure and allegation contained in Count One of the Original Complaint, and adds thereto the following:
 2. That during the month of November, 1978, the Defendant RELIANCE was an insurance company acting through its agents, Tony Craft (CRAFT) and The Nolen Agency (NOLEN) in connection with its writing of fire insurance policies within the State of Alabama
 3. That at such time, the Defendant CRAFT, was over the age of 19 years and was doing business within Jefferson County, Alabama for the Defendant NOLEN, a corporation
 4. That the said CRAFT and NOLEN at such time and place were licensed agents for RELIANCE
 5. That the said RELIANCE, CRAFT and NOLEN solicited certain fire insurance business on property owned by the Plaintiff as described in Count One of the Complaint, and were fully informed that the Plaintiff was the owner of such property
 6. That the said RELIANCE, CRAFT and NOLEN failed to adequately underwrite and insure such property, in that the said Defendants knowing the true ownership of said property, failed to name the Plaintiff as the insured under such policy of fire insurance which was actually issued by RELIANCE. That such failure to properly and adequately name the Plaintiff as the named insured amounted at such time to negligence of the said Defendants
 7. That as a proximate consequence of the negligence of the said Defendants, the Plaintiff has been damaged in the amount of $150,000.00, interest and the costs of this action, in that it has suffered a fire loss, while said policy was in full force and effect, and that the defendant RELIANCE has failed and refused to pay the Plaintiff as a result of not being named as the named insured upon such policy
 WHEREFORE, Plaintiff demands judgment against RELIANCE, CRAFT and NOLEN in the amount of $150,000.00, interest from to-wit: January 2, 1979 at the legal rate, lost rents and profits, and reasonable attorney's fees and costs
State Farm argues that the exoneration of Henley in the final decree also exonerated State Farm of any liability of any tort of misrepresentation because its only liability would be through the theory of respondeat superior. We agree from the evidence presented that State Farm's liability under the misrepresentation count would be under the rule of respondeat superior, and the judgment exonerating the servant Henley relieves the master State Farm. See, Griffin v. Bozeman,234 Ala. 136, 173 So. 857 (1936)
In addition, Substation claims that the conduct of State Farm in ordering, directing and participating in back dating a cancellation notice and its action in attempting to rescind the policy even after it had been served with the lawsuit in this action clearly establishes the tort of bad faith. We do not agree. The evidence is too much in dispute to allow a determination that the actions of State Farm were to such a degree as to amount to the exercise of bad faith
However, evidence was introduced at trial from which the trial court could have found that State Farm was negligent through the actions of Terry in the processing, issuing, and later attempted cancellation of the policy. These actions could be found to be the proximate cause of Substation's damages ARCP 15 (b) states in part: *Page 609 
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . . [F]ailure so to amend does not affect the result of the trial of these issues
Therefore, the court would not have been in error if it found State Farm liable for negligence in its actions regarding Substation
There was also sufficient evidence presented to warrant a finding by the trial court that Reliance was negligent in its actions in underwriting and insuring the property after it had knowledge of the true owner
Therefore, we find no reversible error in the trial court's finding State Farm and Reliance jointly and severally liable to Substation
Lastly, both defendants argue that the trial court committed error in awarding Substation $187,496.51 as damages. We agree
The amount of the award is not supported by the evidence, whether it is founded on tort or contract theories of recovery If recovery is based on the insurance policies, the correct measure of damages is the actual cash value of the property at the time of loss, but not exceeding the cost of repair or replacement of the building with goods of like kind within a reasonable time after loss. Commercial Union Assurance Companyv. Ryals, 355 So.2d 684 (Ala. 1978)
Substation relied upon the general contractor who built the insured building to prove the cost of repair. On direct examination, he testified that it would have cost $147,345.00 to repair the building at the time of the loss. On cross-examination, he admitted that the figure could be reduced by at least $14,000 because the footings and foundations could be reused. He also testified that the use of salvage would reduce his estimate by another $10,000. Therefore, the amount necessary to replace the building totaled $123,345.00
Actual cash value means what the property is worth in money, allowing for depreciation. Glens Falls Insurance Co. of NewYork v. Garner, 229 Ala. 39, 155 So. 533 (1934). The cash value of the property can be determined through the correlation of the evidence. Evidence was produced which established that Substation paid $165,000.00 for the lot and building in 1976 Of that amount, $39,600.00 was for the land. There was no evidence produced to show whether the building and property increased or decreased in value since that time. There was evidence that Substation made improvements to the property of $2,100.00 before it leased the property to Dennis. If Dennis had exercised his option to purchase the premises, Substation would have received a total of $170,500.00 over a three-year period. That figure would include the land valued at $39,600.00, which when subtracted makes the value of the building $130,900.00. There was also evidence that Dennis Mining made improvements totaled at $17,000.00. That figure was also available to be added into the total, but even if it were, the total would be $147,900.00
Because the cost of replacement is less than the actual cash value, the figure of $123,345.00 would be the correct measure of damages under the policies, plus interest at the rate of six per cent per annum from the date the companies denied coverage
Substation claims that the proper measure of damages under a tort claim would be the cost of rebuilding the property as of the date of trial plus any exemplary damages found by the court to be appropriate. As discussed previously, the only liability State Farm and Reliance could have under a tort theory would be for negligence in not providing Substation the insurance coverage to which it was entitled. We can find no action on the part of State Farm or Reliance to warrant the finding of exemplary damages. Therefore, the correct measure of damages under tort would be compensatory or the amount that would have been recoverable under the insurance coverage to which it was entitled, but denied through *Page 610 
the defendant's negligence. See 16 Appleman, Insurance Law andPractice, 1968 Ed., § 8831, page 457
Finding no evidentiary basis to substantiate the judgment for $187,496.51, we remand the issue of damages to the trial court for a determination consistent with this opinion
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur